Eastern Dist
*April*, 1829.

COCHRAN
& AL.
*vs.*
FORT & AL.

A sale of a lot *front to the river*, according to a plan, which shews the front line to be within the levee, does not carry with it alluvion, provided at the time of the sale, batture was formed of sufficient height and magnitude, to be susceptible of private ownership.

*COCHRAN & AL.* vs. *FORT & AL.*

**APPEAL** from the court of the first district.

**PORTER, J.** delivered the opinion of the court. The petitioners state that Bertrand Gravier, of the late Spanish province of Louisiana, being the owner of part of a plantation formerly belonging to the Jesuits, near the city of New-Orleans, sold to a certain Joseph D. Hevia, then of the same place, a portion of said land adjoining the city having sixty feet in front, with the depth of three hundred and thirteen; and that the said Hevia afterwards sold the same to the petitioners.

That it was the intention of Gravier to sell, and of Hevia to acquire along with the said land the right of alluvion, as the same belonged to the vendor: and that by the deed of sale the vendee did acquire this right.

That since the sale of the land to Hevia, a valuable margin of soil has been formed in front of it, and incorporated therewith by alluvion, which is the property of the petitioners.

That notwithstanding their legal right to this alluvion the defendants have illegally enter-

ed thereon, pretending to be the owners, and detain the same.

Eastern Dist -
*April* 1829.

COCHRAN
& AL.
*vs.*
FORT & AL.

The petition concludes with a prayer, for possession, damages for the detention, and general relief.

The defendants plead the general issue. Set up title under four persons, who they aver purchased the premises, at a sale made in virtue of an execution issuing from the district court to satisfy a judgment obtained against the heirs of B. Gravier. That this judgment was rendered for the amount due by Graviers' heirs, for making a levee, and other indispensable works and repairs on the lot; which work and labour gave a privilege or lien in it. The pleas of prescription, of ten, and of thirty years, are also contained in the answer.

There was judgment in the court of the first instance for the plaintiffs, and the defendants appealed.

The case made for this court consists not only of the evidence actually given on the trial, but by consent of parties embraces all the testimony taken in the cases of *Gravier* vs. *The Aldermen and Inhabitants of New-Orleans. Morgan* vs. *Livingston. Gravier and oth-*

Eastern |Dist
*April* 1829.

COCHRAN
& AL.
*vs.*
FORT & AL.
ers vs. *Livingston. Hawkins* vs. *Livingston, Gravier and others. And Fort & Story* vs. *The Syndics of B. Morgan.* In a word, of all the conflicting evidence, which this seemingly never failing source of litigation, has produced for the last twenty-five years.

The argument, as heretofore, in all the other causes which have grown out of claims to the batture, has been able and elaborate, and several important questions of law have been raised and discussed: but the view we have taken of the case does not require us to examine several of the points to which counsel have devoted their attention.

By the pleadings, the plaintiffs are placed within the operation of the well established rule in petitory actions: that they must recover on the strength of their own title, not on the weakness of their adversaries.

The first question, therefore, for our enquiry is, have they shewn a title to the property claimed in the petition?

They contend they have, by presenting in the first place, a sale from Bertrand Gravier to Hevia. In this sale Gravier describes the premises as having sixty feet in front to the

river Mississippi, with 313 in depth, conform-
ably to the plan made by Don Carlos Laveau
Trideau.   This plan has been produced to the
court, and it shews the premises to be one of
the front lots, but the lines marked on it do not
extend to the river.

They offer in the second place, the sale
from Hevia to them.   In this deed of convey-
ance the property is described in the same
manner as in that from Gravier to Hevia.

And they urge that in virtue of these titles
they have a right to all the batture that has been
formed in front of them since the period of the
purchase from Gravier.

Whether such a right does follow as a con-
sequence of the sale thus made to them, de-
pends on a question of fact: namely, whether
any alluvion of sufficient height and magni-
tude was formed at the time these conveyances
were made to them, to be susceptible of pri-
vate ownership.   If it was so formed, it re-
mained the property of the vendor, and did
not pass to the vendee.

This principle was established in the case
of *Livingston* vs. *Herman,* and it entered ma-
terially into the motives of the decision in the

VOL. VII. N. S.        79

Eastern Dist.
*April* 1829.

COCHRAN
& AL.
*vs.*
FORT & AL.
case of *Morgan* vs. *Livingston*. Its correctness has not been impugned in argument, and a review of the reasons on which it was founded, has satisfied us still more of its correctness. 6 *Martin*, 19. 9 *ibid*. 656.

The purchasers of the front lots being in this case the plaintiffs, they are required in order to enable them to recover, not only to shew a title in Hevia, but also the transmission of that title to them. It matters little in the decision of the cause, whether the batture was formed or not, at the period he acquired from Gravier. Admitting it was not, and that the alluvion afterwards added to the lot belonged to him, it behoves the petitioners to shew they have acquired it. Now, the sale from Hevia to them does not expressly convey the batture. If, therefore, it passes any right to the alluvion, in front of the lot sold, it can only do so under the principles already recognized by the court, viz, that there was not at the date of the conveyance any batture formed of sufficient height and magnitude to be susceptible of ownership. If such batture did exist, it was retained by Hevia, and did not pass to the plaintiffs. Our examination of the evidence has therefore been

directed to an enquiry into the existence, or non existence of the alluvion on the 28th February, 1803, the day of the sale from Hevia, to Cochran and Rhea.

Eastern Dist.
*April* 1829.

COCHRAN
& AL.
*vs.*
FORT & AL.

We have perused with attention the voluminous mass of evidence laid before us, and we have extracted what follows from it, as bearing materially on the matter in enquiry.

Trudeau, the former surveyor general of the province, swears, that at the time he made the plan of the fauxburgh St. Marie, and divided it into lots, at the request of Bertrand Gravier, *a batture existed along the whole front of it.*

Two depositions of Girod have been produced. In that taken on the trial of this cause he states, that he arrived in New Orleans in 1788. In 1793 the batture began to be apparent from Julie street up to Madame D'Lors. *Below there was no batture.* In 1803, he deposited cannon on the place where now stands the house of the defendants. In 1805, they were covered eight feet deep with alluvion. In August, 1803, a vessel belonging to him of 300 tons, moored within fifteen feet of the levee. In 1807, there was about 20 or 30 feet in space from the levee to the river at low water, and

Eastern Dist.
*April*, 1829.

COCHRAN
& AL.
*vs.*
FORT & AL.

no more.    In 1810 or 1811, the batture began to form considerably.

In the testimony given by the witness in the case of *Fort and Story* vs. *Syndics of B. Morgan*, he stated, that in 1793 the batture opposite the property of Madame D'Lor was high, from thence *it diminished gradually in breadth till opposite a small fort near the upper line of the city.*    That in the year 1803 he anchored one of his vessels opposite Hevia's house, and that she was not more than 200 yards distance from the house.    The witness was 77 years of age.

*Flower* states his recollection of the formation of the batture to be very imperfect.    In 1807 there was a small portion of batture discoverable.    At high water it was always covered.    In 1807 there was about 20 or 30 feet in space from the levee, to the river.

*Eves* swears there was three feet water on the batture in the year 1809, when the river was at its highest point of elevation.

*Morgan* states that in 1793 the river at low water came within fifty feet of the levee.    Batture in front of the *lots increased considerably* from 1793 to 1803 & 1804.

*Arnauld* deposes that in the year 1793, a batture existed between Girod street and the city, which was dry when the river was low, and which was covered to the depth of two or three feet when it was high. That in the same year Hevia, and two other persons, Bailly and Trudeau, erected cabins on the batture outside of the levee, in the front of their lots, and that these cabins were demolished by order of the Spanish government.

*Mayronne* testifies to the erection of cabins on the batture, and knew that they were thrown down by orders of the government. Whether these were the same cabins spoken of by Arnauld cannot be gathered from the evidence.

*DeLonde* swears, that several persons established themselves in flat boats opposite the fauxburgh St. Mary, on the batture, from 1796 to 1803, but that they were removed therefrom by the government. That during the same space of time, when the river was high, there was enough of water from Girod street to the city, to enable flat boats to unload with facility.

*Jorda* states that there was for the last forty three years a batture in front of what is now

Eastern Dist *April* 1829.

COCHRAN & AL.

*vs.*

FORT & AL.

called the fauxburgh St. Mary: That opposite the house of Hevia it was small. That the people coming down the river made use of the batture for unloading and loading their boats.

*Percy* testifies that the batture began to have a certain existence about the years 1790 and 1791 from the city up to Girod Street, but it was unequal in height in different parts. That the batture decreased downwards in breadth and ended in a point near the city. In 1803, the batture opposite Gravier street was covered to the height of 5 feet.

*Lauve* states that 36 or 40 years ago there was a batture in existence, commencing opposite the property of Madame D'Lor, and continuing to the gate of the city.

*Wilkinson* swears that he descended the river in the year 1789, with 13 flat boats, and that he saw no batture below the house of Madame D'Lor. It is not stated at what season of the year the witness arrived in the city. He left it in that year and did not return until 1799.

*Morris* deposes that from 1796 to 1804 flat boats and barges approached the levee from Girod street to the city with ease, but that

Eastern Dist.
*April* 1829.

COCHRAN
& AL.
*vs.*
FORT & AL.

when the water fell, the boats were obliged to haul off.

*Davezac* states there was a batture suscept- ible of ownership in the year 1807, but that at high water it was covered.

*Fortier* testifies, that in 1793 or 1794 there was a batture opposite the property of D'Hevia, but not so large as at present.

*Delasisse* declares, that in 1794 the batture commenced about half an arpent above a small fort or battery on the river, which was about 100 toises below the fauburg St. Mary. It was not high at this point, but entirely unco- vered at low water, and the soil firm. D'Hevia built a cabin on it in front of his lot in the year 1794.

There is some contradiction in this evi- dence. We think the weight of it decidedly in favor of the assertion of the defendants:— that at the time the petitioners bought from Hevia there did exist alluvion opposite the lot of sufficient height and magnitude to be sus- ceptible of ownership. Out of the sixteen wit- nesses, nine of them depose to its existence from the year 1793 up to the year 1803. Only one of the others contradicts them, and his

Eastern Dist.
*April* 1829.

COCHRAN,
& AL.
*vs.*
FORT & AL.

evidence taken on the different trials cannot be reconciled. The error no doubt proceeding from the witness becoming old, and his memory waning. Flower declares his recollection of the formation of the batture to be imperfect. Wilkinson deposes to its situation in 1789; does not state whether it was at high or low water he arrived with his flat boats in that year. Left the city the same season, and did not return until ten years after.

Whether it was of sufficient height to be susceptible of ownership at the period of the sale from Hevia, is the next question. And here too we think the proof preponderates in in favor of the defendants. There is no positive evidence before us at what height batture may be reclaimed from the river, and appropriated to private use. It is not perhaps susceptible of direct proof, much depending on the position of the alluvion, the force of the stream where it is formed, and other circumstances. It is proved beyond doubt that so far back as 1793 the batture opposite Hevia's lot was of sufficient height to enable him to erect a cabin on it: that it continued to increase in extent and height from that time up to 1803.

That in the last mentioned year it was only co-
vered at high water to the depth of five feet.
With this elevation, a levee of less size than
many found on the Mississippi would have en-
abled the proprietor to have excluded the ri-
ver, and convert the soil to such purposes as
he might have thought proper, or found pro-
fitable.    We have been unable to discover in
all the evidence any reason for saying this bat-
ture was not susceptible of ownership, except
it being covered during the annual inundation
of the river by the water.   But this circum-
stance does not authorize the court to con-
clude that the alluvion was not susceptible of
ownership.   Such a principle would shake the
titles to a large portion of the most valuable
property in Louisiana.   There is little or no
land on the banks of the river, within the li-
mits of this state, if we except an inconsidera-
ble quantity in the neighborhood of and above
Baton Rouge, which would not be covered
with the waters of the Mississippi in the spring
months, were it not for the artificial embank-
ment which the industry of man has raised to
exclude them.

Supposing, however, this view of the sub-

Eastern 'Dist
*April* 1829.

COCHRAN
& AL.
*vs.*
FORT & AL.

ject incorrect, and that we were to conclude with the plaintiffs, that no batture susceptible of ownership existed in February. 1803; their case could not be made much stronger.  The faubourg was incorporated two years after.  To enable them, therefore, to recover in this action, they must shew a batture created between the day of their purchase, and the date of the act of incorporation, which was susceptible of ownership; for if the alluvion was formed afterwards it became the property of the city and not of the front proprietors.  Now, every consideration, both of fact and law, which could authorise us to say it was not susceptible of being converted to private property in 1803, would prohibit us from concluding it was so two years after.  The evidence does not establish any such change within that space of time as to enable us satisfactorily to distinguish, and say it was susceptible of ownership at one period, and it was not at the other.  From the year 1803 to the year 1819, there was only a difference in the depth of water on the batture of two feet when the river was at its highest stage, according to the testimony of Eves and of Percy.  *Partida* 3, *tit.* 28. *Ley* 9.  7 *Martin, n. s.* 81.

It is therefore ordered, adjudged and decreed, that the judgment of the parish court be annulled, avoided and reversed, and that there be judgment here for the defendants, with costs in both courts.

Eastern Dist
*April*, 1829.

COCHRAN
& AL.
*vs.*
FORT & AL.

*Pierce & Hennen* for plaintiffs—*Livermore & Morse* for defendants.