Aristide Barre v. The City of New Orleans.

No. 951.—ARISTIDE BARRE *v.* THE CITY OF NEW ORLEANS.

If the alluvion or batture which has formed on and is attached to a riparian tract or lot of land has attained a sufficient elevation above the waters to be susceptible of private ownership at the time of the sale, it does not pass with the sale of the land or lot, unless so expressed. But if it has not reached a sufficient elevation to render it susceptible of private ownership, then it passes to the vendee, who is invested with all the rights of accretion which the vendor had, without any expressions of the vendor, indicating its transfer.

In this case the plaintiffs allege that they have lost the title to the lot on which it is claimed the batture has formed, by prescription, but they claim to be the owners of the batture, notwithstanding. The evidence failed to show that the batture had attained a sufficient elevation to render it susceptible of private ownership at the time the plaintiff parted with the ownership. Held—That they having lost their title to the lot itself, by prescription, could not recover the *batture,* even though the *batture* were shown to have been formed to an elevation sufficient to render it susceptible of private ownership, before they parted with the title by transfer to their vendee.

APPEAL from Second District Court of New Orleans. *Thomas,* J. *Durant & Hornor, E. Fitleul,* and *Hornor & Benedict,* for plaintiff and appellant. *J. R. Beckwith,* City Attorney, and *Randall Hunt,* for the city of New Orleans, defendant and appellee

TALIAFERRO, J. The plaintiff, as agent of several claimants, representing themselves to be the heirs at law of their grandmother, Marie St. Jean, a free woman of color, institutes this suit to recover a portion of the batture or alluvion deposit formed by the Mississippi river in front of the city of New Orleans, alleging that their ancestor was the owner of a lot of ground measuring two hundred and forty feet front on the river, according to a plan made by C. L. Trudeau, surveyor, on the first of April, 1788; that the said lot, numbered thirty-four on Trudeau's plat of survey, and marked on that plat, in red ink, "Marie, negresse," is situated at the corner of Girod and Tchoupitoulas streets. The petition avers the loss of right to this lot by prescription, but insists that at the time of their ancestor's purchase, on the first July, 1789, there existed in front thereof, the public road, the dike or levee and a large batture, which the waters of the river covered only when they rose to their highest elevation, the whole being subject to a servitude in favor of the public, and that the sale of the lot with "front on the river," made the property riparian with the right of batture or alluvion, which right the plaintiff contends subsists in them.

The answer is a general denial. Judgment in the lower court was rendered in favor of the defendant, and the plaintiff appeals.

It appears, from the testimony, that Marie St. Jean bought the lot in question from Marie J. Desloudes and her husband, Bertrand Gravier, by an instrument purporting to have been passed before a notary on the first of July, 1789; that the purchaser resided upon it for several years with one Jean Ternoir, with whom she lived in a state of concubinage; that upon the death of Ternoir, which it seems occurred in January, 1792, his creditors caused the lot to be seized and sold at

auction as a part of the property of his succession, and that it was purchased by one Orset, who subsequently sold it to C. F. Girod; of this purchase at auction by Orset and his transfer, a memorandum is made in red ink on the lot designated as number thirty-four on Trudeau's plat. It is shown that Marie St. Jean persisted in remaining upon the lot for a considerable length of time after it was sold, occupying a shed in the rear of the lot: that she complained of being ill treated in regard to the sale of the property, exclaiming on one occasion to a friend: "See, they have sacrificed my property to pay the debts of my husband!" Her occupation, it is shown, was that of a nurse and a midwife of much reputation and large practice in respectable families of the city, and that she accumulated a considerable amount of property and purchased several slaves. But notwithstanding the intelligence and facilities which these facts imply, it does not appear that any legal measures were ever taken in her behalf to avoid or rectify the injustice of which she complained.

Upon the trial of the case in the lower court objection was made to the introduction of a certified copy of the notarial act of sale before mentioned, on the ground that it was attested by only one witness, and that it was not signed by the purchaser, according to the laws of the Spanish Code then in force in Louisiana. The objection was overruled, and a bill of exceptions reserved. We do not deem it important to pass upon this exception, as obstacles of graver import seem to lie in the way of the plaintiff's recovery.

That to riparian proprietors belong the accretions which may, in progress of time, be formed by the sedimentary deposits of the stream along its shores, there is no question. In the sale of riparian land the test as to whether the alluvion or batture, if any, attached to it is conveyed with the land or not, has been definitely settled by repeated decisions of this court. If, at the time of the sale of riparian land, the alluvion attached has attained a sufficient elevation above the waters to be susceptible of private ownership, the alluvion does not pass with the land, unless so expressed. See 6 M., 19; 9 M., 656; 7 N. S., 624; 11 La., 142; 10 An., 54 and 55; 13 An., 350.

The evidence in the record bearing upon this point does not enable us to form any satisfactory conclusion. We have the allegation of the plaintiff, already noticed, that at the date of the sale to Marie St. Jean there existed in front of the lot she purchased " a large batture, which the waters of the river covered only when they rose to their highest elevation." If this was the case, Maria St. Jean acquired no title to the alluvion formation. The title remained in her vendor. If, at the time of the sale, there were no alluvion deposits, or if there were any and they were not of a character to be susceptible of private ownership, the subsequent accretions inured to the benefit of those

holding under the sale made of the lot of ground as the property of Ternoir, the title under which would seem to have become complete by the prescription of thirty years.

By an act of the Legislature of the thirtieth of April, 1853, a right was given "to any riparian proprietor to institute suit against the city corporation for so much of the batture as may not be necessary for the uses of commerce and navigation, and for the necessary highways and other public uses, and if it be determined by the court that any portion of said batture be not necessary for the public uses above mentioned, the court shall decree that said owner is entitled to said property, and compel said corporation to permit him to enjoy the use and full ownership of such portion of said batture."

Conceding the plaintiffs have the right they set up growing out of the riparian ownership, which they claim once existed in Marie St. Jean, still, under the statute quoted, they would be entitled to reclaim only such portion of the batture as would not be required for public uses. We find no evidence in the record establishing what portion, if any, of the batture claimed by the plaintiff is not required for public uses.

Marie St. Jean died in the early part of the year 1815. From the death of Ternoir, in 1793, a period of twenty-two years, no legal measures were adopted to rescue the property, (bought, as alleged by Marie, from Bertrand Gravier and wife), from what is now alleged by her heirs to have been an act of spoliation. Her heirs, if they derived any rights from their ancestor, have slept upon these rights more than half a century. In asserting a claim at this late day to the property in question, it behooves them to establish clearly and fully the title they set up. This we think they have failed to do.

It is therefore ordered, adjudged and decreed that the judgment of the district court be affirmed, with costs.

---

## On Rehearing.

LUDELING, C. J. After mature consideration, we see no reason to change the decree rendered by us on the eighth of March, 1869.

The plaintiffs allege that they are entitled to the possession and control of certain portions of the batture in the city of New Orleans, as proprietors of riparian property; that their ancestor owned a lot, number thirty-four in a certain plan of a portion of the city at the corner of Girod and Tchoupitoulas streets, in the year A. D. 1779, which lot was bounded, on the front, by the river; that, in 1793 or 1794, after the death of Ternoir, with whom she had been living in concubinage on the premises, the creditors of said Ternoir caused "the

above described lot of ground, situated at the corner of Girod and Tchoupitoulas streets," to be sold, as the property of "the said Jean Ternoir, their grandfather," to one Orset, who sold it to Francois Girod; and that, by the lapse of time, they had lost their title thereto. But they claim the batture in front of said property, which they allege existed at the time of the purchase by their mother, Marie St. Jean.

If it be true that alluvion had been formed, adjoining the levee in front of this lot, and was of sufficient height to be considered as private property at the time it was sold to Orset, in 1794, it belonged to the owner of lot number thirty-four, as an adjunct or accessory thereof. It is impossible, therefore, to perceive how that fact would benefit the plaintiffs, if proved, as they aver in their petition that this same lot was sold, at public auction, during the lifetime of their mother, and that their right and title thereto had been destroyed by prescription.

The right to alluvial formation, or batture, is inherent in the property itself, and results from natural as well as municipal law, in consequence of the local situation of the land to which it is attached. If, therefore, lot number thirty-four had a "front to the river"—"*frente al rio*"—when the ancestor of plaintiffs purchased, its front remained the same when it was sold at public auction; for, according to their own judicial admissions, it was "the above described lot of ground, situated at the corner of Girod and Tchoupitoulas streets," which was sold, and the title whereof, they admit, they had lost by prescription. There is nothing in the record to show the contrary.

But there is no evidence whatever to show that any alluvial formation existed in front of lot number thirty-four when Marie St. Jean bought it, or when it was sold at public sale. If the batture were formed subsequently, it belonged to the person who owned the lot at that period. 6 M. 19; 9 M. 656; 11 La. 142; 18 La. 229.

It is therefore ordered that the decree heretofore rendered be affirmed.