No. 11,720.

## HEIRS OF SIMILIEN LA BRANCH VS. FERGUS MONTEGUT.

When property mortgaged is described as "being on the left bank of the Mississippi river and as having a certain front on the said river," the object intended to be mortgaged must be held to be the same as that which would have been intended by the parties to have been conveyed in an act of sale under the same description.

Where property sold is described as "a sugar plantation on the left bank of the Mississippi river having a front of one-fourth of one arpent, more or less, on said river by eighty arpents in depth," the purchaser is entitled to delivery to the full extent of the premises, as specified in the contract, and to insist upon the call for the river as the front boundary. He has the right to exact a *front on the river*, and by that term is meant not a front exceptionally on the river as resulting from extreme high water or flood, but one to be found on the river in its ordinary stage of high water.

APPEAL from the Twenty-first Judicial District Court for the Parish of St. John the Baptist. *Rost, J.*

*Branch K. Miller* and *Joseph F. Poché* for Plaintiffs, Appellants.

*Thomas J. Semmes & Legendre* for Defendant, Appellee.

Argued and submitted March 2, 1895.

Decided March 25, 1895.

Rehearing refused April 22, 1895.

On the 23d of March, 1871, the plaintiffs, by act before Guyol, notary public, mortgaged in favor of Octave Hymel, property de-

scribed in the act as "a certain tract of land or sugar plantation situated in the parish of St. John the Baptist, on the left bank of the river Mississippi, at about thirty-nine miles above the city of New Orleans, measuring eleven arpents front on the said river by a depth of eighty arpents."

In July, 1873, Hymel obtained an order for the seizure and sale of the mortgaged property, which, under the order, was seized by the sheriff of the parish of St. John, in October, 1873; and after having been divided into lots, under the then existing laws, was sold on October 4, 1873, to different parties. The defendant, at that sale, became the purchaser of four of the lots.

In his seizure the sheriff described the property as a certain tract of land situated on the left bank of the Mississippi river, measuring eleven arpents more or less front on said river by eighty arpents in depth, and as having been seized, together with all the rights, servitudes, etc., of said lands.

Four deeds of sale were executed by the sheriff to the defendant. In each of these deeds, the sheriff recites that the property seized had been divided by the defendants into lots not less than ten, nor more than fifty acres, as per plan deposited in his office; that said lots numbered from *one* to *thirty-six*, each lot measuring one-fourth of one arpent more or less front on said river (Mississippi river) by eighty arpents more or less in depth. That after legal notice he had advertised the tract of land with all its rights and servitudes for sale. That after crying the said lots (therein described) by number, and as measuring *one-fourth of an arpent more or less front on said river by eighty arpents more or less in depth*, with all its rights and servitudes, he had adjudicated the said lot to Fergus Montegut (the defendant).

The purchaser took possession of the property adjudicated to him, and has held the same ever since. There was judgment for defendant, and plaintiffs appealed.

————

The opinion of the court was delivered by

NICHOLLS, C. J. The evidence shows that at the time of the granting of the mortgage a levee ran along the river front, and that beyond the levee there unquestionably existed a batture. That in 1872 or 1873 a new levee, further to the front, was built, the effect

of which was to bring the batture inside of the general line of levees as then established on the front. The testimony does not show by whom this new levee was constructed, but we assume it was put up by the public authorities, and to conform to public requirements at that time. The batture in question, prior to the building of the new levee, was, during the period of high water in the Mississippi, covered by water to the depth of two or three feet, and even in low water portions of it remained covered, by reason of there being sloughs or low places on it. The precise stage of the water in the river which uncovered the batture, or that which had the effect of overflowing it, was not shown. In its present condition it seems still to be covered, when the river is up, by seepage and rain-water combined. Even in low water, and as matters now stand, the batture can not be utilized by the defendant for hauling his freight to the boats upon the river in consequence of its muddy condition. The act of mortgage neither referred to a plan, nor to the levee, nor to a road, as the front boundary of the plantation; on the contrary, it expressly gave the river as that boundary. The property was seized and sold according to the mortgage description. When property mortgaged is described as being "on the left bank of the Mississippi river, and as having a certain number of arpents front on the river," we must hold the object intended to be mortgaged to be the same as that which would have been intended to be sold in an act of sale under a similar description.

In Morgan vs. Livingston, 6 M. 224, this court said:

"From a very close examination of the books of the Land Office of the United States, which have been submitted to us, and the depositions of surveyors in this case, it is clear that in French and Spanish conveyances, both public and private, the words *face au fleuve*, *face frente al rio*, *frente*—front to the river, or front, exclusively designates estates bounded by the river, which in this country are otherwise called riparian, bound to the repair of the road, its ditches, bridges and levees, and to supply ground for either or the whole of these, when that which they cover is carried away by the water. We are therefore bound to take the expression *frente al rio* in the deed as evidence of the intention of one of the parties to convey, and of the other to acquire a riparian estate, unless by taking it in this sense we are led to an incongruous or absurd result. *  *  *  We conclude that on the inspection of the deed,

the words *front to the river* used therein were intended to denote a riparian estate bordering on the river."

In the case cited, referring to the claim that the existence of a public road in front of the trapezium of land, which had been sold, was evidence of an intention that the land sold should have another boundary than the river, the court said: "If the trapezium had been immediately on the river, and no road had intervened, the qualified property which riparian owners have in the banks before their field would have passed to Poeyfarre (the vendee) as an accessory of the trapezium, because in the sale of a field the sale of the bank is understood as a part or accessory of the field. *En la venta del fundo se intende vendida la ribera como parte de el; si se vende el fundo que esta immediato alla ribera, tambien se incluye como appendice del mismo fundo. 3 Cur. Ph. ill loco citato, No. 113.*

"The banks of the river are not sold, but rather pass as an accessory of the land sold. *Ripae non venduntur, sed magis accedunt rei venditæ, Cæpola de serv. rust.* The property of the banks belongs to those to whose fields they are contiguous. *Proprietas earum (riparum) est quorum prædiis hærent. ff. 1, 8, 5, Code Civil 96, Art. 8.* They must be the property of the riparian owners without being included or mentioned in their grants, for if they were only when included there would be no use for the provision in the law; it would be idle. If, therefore, when the sovereign grants land contiguous to the river, without mentioning the bank, this passes, it must do so as an accessory. If the bank pass as an accessory in the grant of the sovereign, it must also in the deeds of private individuals.

"The bank passes with the field, even when there is an intervening public road. *Ripa cedit fundo, 1; riparum ff. rer. divis. Inst. eod. tit. ub. gloss. dicit verum si via est media. Ripæ respectu proprietatis sunt illorum quorum prædiis hærent, sed quid si via esset in medio, inter-flumen et agrum vel domum? Responde idem ut ripæ sunt eorum. Cæpola, tract. 11; de serv. rust. cap. 26, in ripa.*

"If there be a public road between a field and the river, still that which is made by alluvion accrues to the field."

Art. 457 declares that "the banks of a river or stream are understood to be that which contains it in its ordinary stage of high water, for the nature of the banks does not change, although for some cause they may be overflowed for a time. Nevertheless, on the borders of

the Mississippi and other navigable streams, where there are levees established according to law, the levee shall form the banks;" and *Art. 455*, that * * * "the ownership of the river banks belongs to those who possess the adjacent lands."

In Morgan vs. Livingston the court said: "The levee, then, as well as the batture under water, is a part of the bank, and the bank is a part of the river, which consists of three things—the water, the bed and the bank."

In the case at bar there can be no discussion as to what the front boundary was declared to be—it was not, as in the case we have just been quoting from, described as *fronting the river*, or *fronting to the river*, but as property " *on* the left bank of the Mississippi having a certain *front on* that river." The mortgagee was entitled to the benefit of his contract to the full extent of the premises as specified in the contract, and a purchaser under a foreclosure of the mortgage was entitled to a like delivery to the full extent of the premises as specified, and to insist upon the *call for the river as the boundary*. Guglielmi vs. Geismar, 47 An. 152; C. C. 2491. It was his right to exact a front on the river, and by that term is meant not a front exceptionally on the river, as resulting from extreme high water or floods, but one to be found on the river at its ordinary stage of high water.

As the ownership of the batture by passing to *the defendant*, under and through this legal right, *passed out of the plaintiffs at the same time*, it is a matter of no legal interest to them whether the transfer was effected by the batture falling directly under and within the description of the thing mortgaged as an existing part of the body of that very thing, or whether it was transferred silently, without express mention, and merely as an accessory of a principal thing mortgaged. In either event it ceased to belong to plaintiffs. We think the District Court correctly stated that the issues in this case were similar to those raised in the case of Hollingsworth vs. Chaffe, 33 An. 547.

We have carefully examined the record, and think the conclusions of the District Judge as to the facts were correct. We see no error in the judgment appealed from, and it is hereby affirmed.

Rehearing refused.