Judge Tiffany G. Chase
This appeal involves a petitory action over batture. Appellants P & G, LLC; Marsha Jones; and Anne Livaudais (collectively "P & G") seek review of the trial court's judgment denying P & G's demand to name it owner of certain batture and granting Appellees' reconventional demand *373 declaring Shingle Point, LLC and First Equity, Inc. (collectively "Shingle Point") the owners of the batture.[1] Finding no error in the trial court's ruling, we affirm.
FACTUAL AND PROCEDURAL HISTORY
The disputed batture is located on land formerly known as the Harlem Plantation, which is situated on the east bank of Plaquemines Parish.
On June 28, 1946, John and Florian Lopez (hereinafter "the Lopez Brothers") acquired Harlem Plantation from Terrebonne Land Development Corporation. Later that year, the Lopez Brothers commissioned J.C. DeArmas, Jr., to prepare a survey (hereinafter the "DeArmas Survey") subdividing the land into individual lots. Between 1947 and 1951, the Lopez Brothers sold several of these lots and partitioned the remaining lots amongst themselves. On January 14, 1952, Florian Lopez sold his half, on which the lots and batture relevant to the case sub judice are located, to Charles S. Potter (hereinafter "Mr. Potter"). The act of sale between Mr. Potter and Florian Lopez stated that the "tract of land hereby conveyed fronts on the Mississippi River, and this sale covers and includes all battures, accretions, and all riparian rights which appertain or belong to said tract of land."
Between 1952 and 1958, Mr. Potter sold several individual lots. Some of the acts of sale contained specific language transferring riparian rights and batture, while other acts of sale contained no such language.[2] Through a series of subsequent transactions, Shingle Point ultimately became owner of the lots relevant to this appeal.
P & G filed the instant petitory action alleging ownership of batture emanating from the 1952 act of sale between Florian Lopez and Mr. Potter. In response, Shingle Point filed a reconventional demand seeking to be adjudged the owner of the batture. At trial, the parties stipulated that the acts of sale described the relevant lots as follows:
Lot is designated by Number 1 on the plan of Harlem Subdivision by John de Armas, 1946, according to which said plan of subdivision, the said lot measures 192 feet, front on Mississippi River.[3]
P & G argues the DeArmas Survey does not reflect the lots' boundary lines as going to the river and that it separately reflects the batture as bounded on all four sides (hereinafter the "DeArmas Line"). P & G further maintains that, in the absence of express language granting title to the batture, Mr. Potter retained the batture when the lots were sold.[4]
Following the trial, the trial court ruled in favor of Shingle Point, declaring it owner of the batture and dismissing P & G's claims. While it considered testimony from several lay witnesses who testified regarding the height of the batture at the time of *374 the acts of sale, the trial court ultimately accepted and adopted the conclusion of Mr. Stephen Estopinal (hereinafter "Mr. Estopinal), Shingle Point's expert in land surveying. In its written reasons for judgment, the trial court found Mr. Estopinal's testimony credible, citing his opinion that the use of the phrase "front on the river" evidenced intent to sell all lands up to the Mississippi River. The trial court also cited Mr. Estopinal's testimony regarding the custom of using a meander line stopping at a river road rather than at the river itself. Further, the trial court adopted Mr. Estopinal's opinion that batture was excluded from the sale only if it was specifically excluded. Conversely, when the acts of sale were silent, batture was automatically included. P & G appeals the trial court's ruling.
STANDARD OF REVIEW
A court of appeal may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO , 549 So.2d 840, 844 (La. 1989). This standard demands great deference to the trier of fact's findings. Id. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Id.
DISCUSSION
As cases dealing with batture are increasingly rare in recent years, we first discuss the historical foundation of batture. Accretion formed successively and imperceptibly on the bank of a river is called alluvion. La. C.C. art. 499. Batture refers to lands of alluvial origin formed by imperceptible deposits of material - it has the same meaning as accretion. 2 LA. CIV. L. TREATISE, PROPERTY § 5:9 (5th ed.). Louisiana jurisprudence regarding land at the water's edge dates back to the nineteenth century and involves property transfers taking place as early as the eighteenth century. Barbera v. Midway Land Co. , 453 So.2d 645, 647 (La.App. 5th Cir. 1984). The early cases held that where an estate is bounded by the Mississippi River or is described as fronting on the river, then it is understood to include the rights to any alluvion that may form, at the same time being subject to any diminution from erosion of the banks. Morgan v. Livingston , 6 Mart. (o.s.) 19, 225 (La. 1819), 1819 WL 1297. Morgan was followed in La Branche's Heirs v. Montegut , 47 La.Ann. 674, 676-77, 17 So. 247, 248 (1895), and Meyers v. Mathis , 42 La.Ann. 471, 475, 7 So. 605, 606 (1890) ; see also Hayward v. Noel , 225 So.2d 638, 640 (La.App. 1st Cir. 1969).
The right to accretion is an accessory of the riparian estate; however, once alluvial soil has so built up along the water's edge as to appear above the water at its ordinary stage, the resulting land or batture becomes susceptible of ownership separate from the riparian estate. Maginnis Land & Improvement Co. v. Marcello , 168 La. 997, 1003-04, 123 So. 653, 655 (1929) ; State v. Richardson , 140 La. 329, 339, 72 So. 984, 988 (1916). If the batture has so formed at the time of sale of property belonging to a riparian estate, it must be specifically mentioned in the act of sale to be transferred to the new owner. Ferriere v. City of New Orleans , 35 La.Ann. 209, 210 (1883) ; Cambre v. Kohn , 8 Mart (n.s.) 572, 579 (La. 1830), 1830 WL 2408 ; Tassin v. Rhynes , 366 So.2d 580, 584 (La.App. 3d Cir. 1978) ; Tregre v. Lasseigne , 413 So.2d 218, 220-21 (La.App. 4th Cir. 1982).
To succeed in its petitory action, P & G is required to prove an unbroken chain of *375 valid title to the batture at issue.[5] La. C.C.P. art. 3653 ; Hooper v. Hero Lands Co. , 2015-0929, p. 9 (La.App. 4 Cir. 3/30/16), 216 So.3d 965, 972 (burden of proof on plaintiff where defendant is in possession of the property).
P & G submits three assignments of error. However, these assignments of error present two related inquiries for review. The first inquiry is whether express language was required in the acts of sale in order to transfer the batture. The second inquiry is whether the batture was excluded from transfer by the boundary lines drawn on the DeArmas Survey. Both inquiries turn on questions of fact, and both questions of fact concern the same evidence. We address each in turn.
EXPRESS LANGUAGE REQUIREMENT
Since the earliest days of Louisiana's jurisprudence, the height and magnitude of batture has controlled whether the transfer of batture must be expressly stated in an act of sale. See Morgan , 6 Mart. (o.s.) at 233-34, 1819 WL 1297. The act of sale must be specific when the batture becomes susceptible of ownership separate from the riparian property. Barbera , 453 So.2d at 648 ; Tregre , 413 So.2d at 221. Whether batture has been formed of sufficient height and magnitude to be susceptible of separate ownership is a question of fact. Cire v. Rightor , 11 La. 140, 142 (1837), 1837 WL 754. P & G, as plaintiff in the petitory action, bore the burden of proof at trial.
In the case sub judice , the relevant time period for consideration is dictated by the acts of sale, which were entered into between 1947 and 1958. Considering the expert and lay testimony, the trial court found the disputed batture never formed of sufficient height to be susceptible to separate ownership during the relevant time period.[6]
Shingle Point's survey expert, Mr. Estopinal, testified that the phrase "front on the river" is understood to mean that an act of sale was meant to grant all property, including the batture, up to the river. Similarly, P & G's survey expert, Jay Dufrene (hereinafter "Mr. Dufrene"), acknowledged that, standing on its own, the phrase means the lots would go up to the river. This interpretive concept has been recognized by our Supreme Court for two hundred years.[7] See Morgan , 6 Mart. (o.s.) at 225, 1819 WL 1297 (barring an absurd result, "the expression, frente al rio, in the deed, [is] evidence of the intention of one of the parties to convey, and of the other to acquire, a riparious estate"). As will be discussed subsequently in this opinion, such evidence also assists in the interpretation of the boundaries on the DeArmas Survey.
Further probative of whether the batture was of sufficient height was that it *376 was not indicated as a separate lot or otherwise separately labeled. See Morgan, 6 Mart. (o.s.) at 218-20, 1819 WL 1297. Mr. Estopinal testified this was because the land was not useable. Isaac Gregorie, Jr., Shingle Point's title expert, corroborated Mr. Estopinal's opinion that if the batture was intended to be a separate parcel of land, it would have been indicated as such on the DeArmas Survey. Similarly, on direct questioning from the trial court, Mr. Estopinal stated the "front on the river" language was sufficient to transfer the batture in the partition between the Lopez Brothers.[8] As the Lopez Brothers originally commissioned the DeArmas Survey, their partition would have used express language transferring batture to Florian if the height and magnitude of the batture so required. Likewise, Lee Miller, P & G's title expert, conceded that express language was not required to transfer the batture in the Lopez Brothers' partition; otherwise, Florian would not have been able to subsequently sell the batture to Mr. Potter.
The lines on a survey are not always indicative of the actual boundary lines of a piece of property.[9] Mr. Estopinal explained that it was the customary practice for surveyors to make use of meander lines. According to Mr. Estopinal, meander lines do not indicate the actual boundary but are instead drawn to the edge of usable dry land. This practice was extremely common given the difficulties in surveying batture due to its marshy nature. Mr. Dufrene acknowledged this custom and further admitted he did not know why the DeArmas Line was drawn where it was. He also conceded that Mr. Estopinal had more experience than him in surveying lands on the east bank of Plaquemines Parish.
In light of the above testimony and evidence, we find the trial court did not err in determining no express language was required to effectuate the transfer of the batture. Implicit in its judgment is a finding that, at the relevant time period, the batture was not of sufficient elevation above the water in such a way as to give it a reasonable appearance of permanence. The trial court, relying on Mr. Estopinal's testimony, noted the lack of usable land between the meander line on the DeArmas Survey and the low water mark of the river. It is the province of the trial court to weigh the evidence and to make a factual determination on the susceptibility of batture to separate ownership. See Cochran v. Fort , 7 Mart. (n.s.) 622, 625-26 (La. 1829), 1829 WL 1683. An appellate court may not substitute its factual findings for those of the trial court even though the appellate court may feel its own evaluations and inferences are equally as reasonable. Rosell , 549 So.2d at 844. Accordingly, we find this argument without merit.
DESIGNATION OF OWNERSHIP BY BOUNDARY LINES AND INTENT
Where there is a discrepancy between a survey and a written description in an act of sale, the survey controls. Maginnis , 168 La. at 1003, 123 So. at 654-55. P
*377 & G maintains that its interpretation of the DeArmas Survey and boundary lines suggests batture was excluded in the acts of sale. In ascertaining the location of disputed lines on a survey, natural objects and monuments are of greater importance than artificial monuments, courses and distances. Morris v. Sigur , 584 So.2d 729, 731 (La.App. 4th Cir. 1991) ; Meyer v. Comegys , 147 La. 851, 857, 86 So. 307, 309 (1920). Further, the determination of a boundary is a question of fact. Hooper , 2015-0929, p. 19, 216 So.3d at 977 (citing Morris , 584 So.2d at 730 ). In ruling that the acts of sale at issue transferred the batture, the trial court made a factual determination that the DeArmas Survey and acts of sale were consistent.
Shingle Point's survey expert, Mr. Estopinal, concluded there was no discrepancy between the DeArmas Survey and the acts of sale. As discussed elsewhere in this opinion, Mr. Estopinal testified to the customs and practices of land surveying in the area. Use of the term "front on the river," the practice of using meander lines, and the fact that the batture was not specifically indicated as a separate lot, served as the basis for his expert opinion. These customs are in accord with the aforementioned legal guidelines for determining boundaries: natural monuments outrank artificial monuments. Meyer , 86 So. at 309 ; Morgan , 6 Mart. (o.s.) at 233, 1819 WL 1297 ("the intervention of [a] public road, between the [property] and the river, cannot be considered as proof of the intention of the parties to give the land conveyed another boundary than the river"). The trial court, in assessing the credibility of the experts, chose to accept the testimony of Mr. Estopinal. Our review of the record confirms the trial court was within its discretion in making this factual determination. See Morris , 584 So.2d at 730-31 (citing Rosell , supra ). We find this argument without merit.
P & G also maintains the trial court erred by not considering Mr. Potter's intent in interpreting the acts of sale. P & G asserts the express language used in some of the acts of sale evidences Mr. Potter's intent, as a savvy real estate developer, not to sell the batture on the remaining lots at issue - it was an intentional decision on his part to omit its transfer.
Contrary to P & G's contention, we find the trial court did take Mr. Potter's intent into consideration. As Mr. Estopinal explained, determining the intention of a seller requires consideration of the language of an act of sale. Mr. Estopinal further elaborated that one cannot perform a survey unless they review the title. P & G acknowledged that the "front on the river" language was a holdover from prior transactions. Mr. Estopinal considered this language to indicate Mr. Potter's intent. See Morgan , 6 Mart. (o.s.) at 226, 1819 WL 1297 ("on the inspection of the deed, it appears to us the words front to the river, used therein, were intended to denote a riparious estate bordering on the river"). As an experienced real estate developer, Mr. Potter would have removed this language to reflect a different intent. Further, Mr. Potter's daughter, Mrs. Marion Giardina, admitted she did not necessarily know what her father's intent was when he sold the lots given that she was relatively young at the time. Accordingly, we find this argument without merit.
DECREE
For the foregoing reasons we affirm the judgment of the trial court dismissing the petitory action of P & G and declaring Shingle Point as owner of the batture at issue.
AFFIRMED

Marion Giardina (hereinafter "Mrs. Giardina"), sole member of P & G, was voluntarily dismissed from the litigation as a party plaintiff on her own motion.

At trial, the acts of sale from these transactions were submitted into evidence as joint exhibits.

Mr. DeArmas' name is styled in varying ways in the pleadings, acts of sale, and other documents in the record. In this quotation, we use "de Armas" as it is a verbatim reproduction of the trial transcript.

This includes batture on lots previously sold by the Lopez Brothers prior to the partition. The theory is that as batture on any previously sold lots was not expressly mentioned in their respective acts of sale, it was not transferred until Mr. Potter acquired the batture as his transaction with Florian Lopez expressly provided for its acquisition.

In the instant case, because both parties can trace their title back to a common owner, the Lopez Brothers, the plaintiffs must prove their title back to the common owner. Barbera , 453 So.2d at 647 (citing Weaver v. Hailey , 416 So.2d 311, 317 (La.App. 3d Cir. 1982) ).

Our courts have routinely considered evidence in the form of testimony of "ancient inhabitants of the neighborhood," surveys referenced in the sales, and the opinions of expert surveyors in making this factual determination. Morgan , 6 Mart. (o.s.) at 217-22, 1819 WL 1297.

In contrast, our Supreme Court found no such evidence of intent when a deed used the words "front on the levee." See, e.g. , Livingston v. Heerman , 9 Mart. (o.s.) 656, 718-21 (La. 1821), 1821 WL 1374 ; Ferriere , 35 La.Ann. at 211. Or when there exists, at the time of sale, another parcel of land held by the vendor between the property sold and the river. Cambre , 8 Mart. (n.s.) at 579-80, 1830 WL 2408 ("[i]n this last case, the words front to the river, must be taken as merely descriptive...").

That Mr. Potter chose to use express language is not necessarily proof the batture at issue was of sufficient height to be susceptible to separate ownership. See Meyers , 42 La.Ann. at 475, 7 So. at 606 (express mention of batture conveyed in other titles at an auction was superfluous as all the property sold extended to the river).

"[T]he lines of a plan, especially one made to ascertain the quantity of land sold, ought only to include the ground which is measured, and not ... batture under the surface of the water, which pass[es] as an accessory to a riparious field: this need not be surveyed." Morgan , 6 Mart. (o.s.) at 233, 1819 WL 1297.