| WOODLAND BORROW PITS, LLC | * | NO. 2024-CA-0841 |
|---|---|---|
| | * | COURT OF APPEAL |
| VERSUS | * | FOURTH CIRCUIT |
| WOODLAND PLANTATION, LLC | * | STATE OF LOUISIANA |
| | * | |
| | * | |

* * * * * * *

**BELSOME, C.J., DISSENTS IN PART WITH REASONS.**

I agree with the majority regarding the admissibility of the Billingsley Plat but I would reach a different result for the reasons that follow.

"It is well settled jurisprudence of this state that the contiguous riparian proprietor owns the bank of the river attached to his property and this includes the alluvion or batture[.]" *Seibert v. Conservation Comm'n of La.*, 181 La. 237, 159 So. 375, 377 (1935).[1] *DeSambourg v. Bd. of Comm'rs for Grand Prairie Levee Dist.*, 621 So.2d 602, 609 (La.1993)[2] distinguishes the definition of batture from that of the river bank. The court's opinion defines three stages of alluvion in a river. Alluvion that is below the low water mark of the river bed and is owned by the state in accord with La. C. C. art. 450. Alluvion that has built up above the low water mark but below the river's high water mark is batture which belongs to the riparian owner subject to a servitude in favor of the public as provided by La. C. C. arts. 665 and 563. Alluvion that has risen above the ordinary high water mark is

---

[1] The analysis used by Pits is a misapplication of the jurisprudence that has been distinguished for over 200 years. "Alluvial land above the ordinary stage of water, which belongs to the riparian owner." 2 LA. CIV. L. TREATISE, PROPERTY § 5:9 (5th ed.).

[2] "In each case it appears… that the Court [is] governed by the different facts or circumstances" to determine if the land would be owned privately by the riparian land owner, or in separate private ownership. *Maginnis Land & Improvement Co. v. Marcello,* 123 So. 653, 655 (La. 1929).

1

river bank and is owned by the riparian owner.  The court proceeded to hold that

only the bank of the river is susceptible of private ownership:

> To be susceptible of private ownership, the batture must be reclaimed from the river, i.e., it must form sufficient elevation and magnitude to rise above the waters and become part of the bank. *Cochran v. Fort,* 7 Mart. (N.S.) 622, 662 (1829); *Barre v. City of New Orleans,* 22 La.Ann. 612 (1870); *Ferriere v. City of New Orleans, supra; La Branche's Heirs v. Montegut,* 47 La.Ann. 674, 17 So. 247 (1895). *See* LSA–C.C. art. 499 (1979); La.Civ.Code of 1870 art. 509; *see also* 21 Tul.L.Rev. at 660.

*DeSambourg v. Bd. of Comm'rs for Grand Prairie Levee Dist.,* 621 So. 2d 602,

609 (La. 1993).

In his affidavit, Hugh "Bud" McCurdy stated that it was "more likely than

not" that batture existed above the mean low water plane on March 1, 1919,

contiguous to Tract K-3 and that it was "increasing in height and magnitude"

between surveys done in 1893 and 1921. Under those parameters, the land would

not have been susceptible to separate, private ownership. This is a fact-based

determination that was not addressed by the trial court.

*P & G, L.L.C. v. Shingle Point, LLC,* 2018-0748 (La. App. 4 Cir. 5/15/19),

273 So. 3d 371, was decided on nearly identical facts.  In *P&G*, a purported

property owner brought a petitory action against the property's possessor.  The

possessor filed a reconventional demand seeking to be named the owner.  The

court reviewed the following facts that are identical to those in the case *sub judice*:

(1) Both litigants traced ownership to the same common ancestor in title; (2) The

act of sale described the property as "fronting on the river"; (3) A survey was

referenced in the act of sale; and (4) The survey did not reflect the lots' boundary

lines as going to the river.

In *P&G*, the court cited the trial court favorably in holding that, "the use of

the phrase 'front on the river' evidenced intent to sell all lands up to the

Mississippi River". *P & G,* 2018-0748 at p.3, 273 So. 3d at 374.  It is noteworthy

2

that the written description in Wilkinson's act of sale shows that the plantation property is "bounded above by the Pointe Celeste Plantation and below by the lands of David Witham" and "in the rear by the drainage Canal behind the Pres. cultivated lands." The description gives no boundary on the portion "fronting on the river." From this, one must conclude that the fourth boundary is the river itself.

The majority relies on those cases in which courts have held that a survey controls over a written description in a notarial act when the two conflict. I agree. However, expert testimony in this case shows that the written description need not be understood to be in conflict. Tildon Dufrene, a surveyor who was presented as an expert witness, testified in deposition that customs in surveying vary now and also varied at the time the Billingsley Plat was prepared. He testified that surveys represent riparian lots in a variety of ways. Dufrene's deposition was put in evidence at the trial of the summary judgment. It relates in part as follows:

> Q. …I mean, just—did you consider the fact that it was no—is not in the Horace Wilkinson act of sale as meaning anything?
>
> A. Not by that word. No. Other than saying "fronting on the river," no.
>
> Q. Okay. I mean, was it not a convention even back in the '20s to specifically identify the [batture] in order to be transferred from a vendor to a vendee?
>
> A. Not all the time.
>
> Q. Wasn't it true that that's the majority rule, is that you have to identify the [batture] in order to have that transferred?
>
> A. I would say no.
>
> Q. On what basis do you say "no"?
>
> A. Because I've read a lot of titles that go from the Mississippi River to the 40 Arpent Line and they never call out the [batture].

Tildon Dufrene deposition, 4/27/2022, pp. 45-46.

> Ralph Gipson testified in opposition to Dufrene as follows:
>
> Q. [The]question is: In the context of this survey which shows…, highlighted lots on the inside south toe of the Mississippi River levee, there really is no discrepancy between the text that says fronting on the river and the survey, is there, in your opinion?
>
> A. Not—not any discrepancy, no.

Ralph Gipson deposition, 2/18/2022, pp. 82-83.

The competing opinions of expert witnesses raise a question of fact in this motion for summary judgment. It is well settled that a district court is "not permitted to weigh the evidence or assess the experts' credibility." Opposing opinion testimony under the district court's consideration in a summary judgment demonstrates that genuine issues of material fact remain. *Nolaluna, LLC v. Crosby*, 2024-0555, p. 13 (La. App. 4 Cir. 5/6/25), __So.3d.__, 2025WL1303988.

While *P&G* also presented the court with competing expert witness testimony, that case was in a different procedural posture than the dispute now before us. The *P&G* district court judgment was handed down after a full trial on the merits in which the trier of fact was permitted to weigh the competing opinions and determine which was more credible.

In light of the above and foregoing, I dissent from the majority in result but agree that the Billingsley Plat is admissible.