CHEHARDY, Chief Judge.
This petitory action comes before us for decision on the merits, following our earlier remand of the matter for the joinder of indispensable parties and presentation of evidence concerning their interests. Sutton v. Montegut, 544 So.2d 1181 (La.App. 5 Cir.1989), amended and reinstated on rehearing, 544 So.2d 1183 (La.App. 5 Cir. 1989). The following statement of the facts of the case is taken verbatim from our prior opinion.
“In this petitory action, the plaintiff-appellant seeks to prove her title to a piece of land known as Lot 3-A of the Division of Elvina Plantation and to have the defendant-appellee’s title to that property erased from the parish mortgage and conveyance records. * * *
“Plaintiff, Marjorie Montegut Sutton, and her brothers, John 0. Montegut and Criswell R. Montegut, are co-owners in indivisión of portions of the tract formerly known as Elvina Plantation, located in St. John the Baptist Parish, Louisiana. They acquired the land by donations from their father, J.O. Montegut, and their uncle, Walton J. Montegut.
“The Elvina Plantation was formerly owned by the appellant’s grandparents, *483 C.F. Montegut and Elvina Haydel Monte-gut. J.O. Montegut and his six siblings inherited equal undivided interests in the Elvina Plantation following their parents’ deaths.
“By act of partition recorded on September 7, 1962, the land was divided among the siblings in accordance with a map known as Alternate Plan # 2 for Division of Elvina Plantation by Landry Engineering Company, dated May 15, 1959, revised 7/20/59, 6/6/61 and 7/20/61. Under the plan the plantation was divided into twelve lots, which were grouped into seven parcels of land, each parcel totaling 93.328 acres. The property thus acquired by Walton Montegut is designated on the Landry map and in the act of partition as Lots Three (3) and Three-A (3-A).
“On October 3, 1972, by act of donation inter vivos recorded on October 5, 1972, Walton J. Montegut transferred to John 0. Montegut, Jr., Criswell R. Mon-tegut, and Marjorie Montegut, wife of Alphonse Sutton, land designated in the act as Lot No. Three (3). The property description in the 1972 act of donation varied in several important particulars from the description of Walton Monte-gut’s property in the 1962 act of partition.
“The defendant, Minette Millet Monte-gut, is the wife of Criswell R. Montegut. She claims ownership of the parcel of land made the basis of this suit under an act of sale dated August 5, 1982 from Walton J. Montegut to Minette Millet Montegut, which was not recorded until January 4, 1985, after Walton Montegut died. In that act of sale, the property transferred is designated as Lot Number Three-A (3-A). The property description in the 1982 act of sale also varies from the description in the 1962 act of partition.
“As a result, in December 1987 Marjorie Montegut Sutton filed this suit for recognition of ownership of immovable property. She asserted that the 1972 donation intervivos transferred to plaintiff and her brothers 93.328 acres of land, including both Lot 3 and Lot 3-A of the Division of Elvina Plantation, and that defendant Minette Millet Montegut is unlawfully claiming ownership of Lot 3-A. * * ⅜
“Following trial in May 19,88, judgment was rendered on June 21, 1988, dismissing plaintiff’s demand at her cost. Plaintiff appealed. ⅜ * * ”
544 So.2d at 1182-1183.
In our prior opinion we decided we could not address the merits of the case because John and Criswell Montegut were undivided co-owners who had not been made parties to the suit. Accordingly, we vacated the judgment and remanded the matter to the district court for joinder of the plaintiff’s co-owners and trial as to their interests only. Sutton v. Montegut, supra, on rehearing.
On the remand, John and Criswell Monte-gut filed a joint answer denying they had any interest in Lot 3-A of the Division of Elvina Plantation. They prayed that the plaintiff’s suit be dismissed, but asserted, “[I]n the alternative should this court find Lot 3(A) to be a part of Lot 3, which is denied, that their ownership be recognized together with any other equitable relief appropriate.”
Thereafter the trial court rendered judgment as in the first suit, recognizing Min-nette Montegut to be the owner of Lot 3-A and dismissing Marjorie Sutton’s claims against Minnette Montegut, and also against John and Criswell Montegut. Mrs. Sutton has appealed.
On this appeal she asserts the following were errors by the trial court:
(1) Recognizing the defendant as owner of the three-foot-wide strip of land for sidewalk adjoining Jefferson Highway;
(2) Failing to find that the plaintiff proved not only her title to Lot 3-A but also better title to it than the defendant;
(3) Failing to require John Montegut Jr. and Criswell Montegut to present evidence to support their position, which would have allowed the plaintiff to cross-examine them and to present rebuttal evidence.
*484 The property allocated to Walton Monte-gut in the 1962 partition is described in the act as follows:
“LOTS THREE (3) AND THREE-A (3-A) WALTON J. MONTEGUT TWO (2) CERTAIN LOTS OF GROUND, together with all the buildings and improvements thereon and all the rights, ways, privileges, servitudes and advantages thereunto belonging or in anywise appertaining, situated in Section 29, and 62, Til S; R7E, and Section 62, T11S, R8E, in the Parish of St. John the Baptist, East of the Mississippi River at La-Place, Louisiana, and more particularly designated on the Alternate Plan No. 2 for the Division of Elvina Plantation, made by Landry Engineering Company, certified by S.E Landry, C.E., dated May 15, 1959, revised 7/20/59, 6/6/61, and 7/20/61, and is designated on said plan as LOT NO. THREE (3) and THREE-A (3-A), of the DIVISION OF ELVINA PLANTATION, and according thereto, said LOT NO. THREE (3), commences 535.56 feet from- the upper or north boundary of the Elvina Plantation, being the division line between Lot 2 and 3 and a 50 foot private cross road, the place of beginning, and thence measures 247.79 feet in width and front on said 50 foot cross road by a depth on its north sideline N 68 degrees 52" 03"' East 13,-393.03 feet and a depth on its south sideline N 69 degrees 19" 40"' East 13,-329.72 feet and having a width in the rear of 359.99 feet, which lot of ground contains 89.508 acres, all in accordance with the plan of Landry Engineering Company, certified by S.K. Landry, C.E., dated May 15, 1959, revised 7/20/59; 6/6/61; and 7/20/61.
LOT THREE-A (3-A) contains 3.820 acres all in accordance with the plan of survey of Landry Engineering Company, heretofore shown, which said lot of ground commences 520.63 feet S 21 degrees 52" 14"' East from the old grate bar, located on the upper or north boundary of Elvina Plantation, and thence measures 261.67 feet in width and front on a 50 foot private roadway shown on said plan of survey by a depth on its north sideline towards the river of 648.12 feet; said north boundary line having a bearing from the Jefferson Highway to the rear N 68 degrees 47" 45"' East, the south sideline of Lot 3A has a bearing from the Jefferson Highway N69 degrees 19" 40"' E; said Lot 3-A is bounded North by the Reine Tract; South by Lot 4-A; East by a 50 foot roadway, and west by the Jefferson Highway.
There is also specifically included to the owner of LOT THREE (3) AND THREE-A (3-A), the fee title to that portion of the right of way of the 50 foot private cross road, located in front of Lot 3 and 3-A, between the prolongation of the north and south sidelines of Lot 3 to the rear boundary of Lot 3-A, together with the fee title to the rights of ways, of the I.C. RR., La., & Ark. RR., now the Kansas City Southern and the 3 foot strip of land for sidewalk adjoining the Jefferson Highway and the Baton Rouge-New Orleans Airline Highway, right of way, as shown on said plan of survey made by Landry Engineering Company, but subject to all valid existing servitudes of record affecting same; together with and including alluvion bat-ture and sand bars formed and attached thereto, as well as all accretion to said land by reliction and dereliction thereon and all additions to said land resulting from the changing of water courses or the opening of new channels, between Lot 2 and Lot 4, as shown on the plan for the Division of Elvina Plantation, made by Landry Engineering Company, from the east right of way line of the Jefferson Highway to the Mississippi River at its mean level. [Emphasis added.]”
The property donated by Walton Monte-gut to the plaintiff and her brothers in 1972 is described in the act of donation as follows:
“LOT NO. THREE (3)
That certain lot or tract of land, situated in Sections 29 and 62, T 11 S, R 7 E, and Section 62, T 11 S, R 8 E, in the Parish of St. John the Baptist, East of the Mississippi River at LaPlace, Louisiana, and more particularly designated on the Al *485 ternate Plan Number 2 for the Division of Elvina Plantation, made by Landry Engineering Company, certified by S.K. Landry, C.E., dated May 15, 1959, revised 7/20/59, 6/6/61, and 7/20/71, and designated on said plan as LOT NO. THREE (3) of THE DIVISION OF ELVI-NA PLANTATION, which lot of ground commences 535.58 feet from the upper or northern boundary of Elvina Plantation, being the division line between Lot 2 and 3 and a 50 foot private cross road, shown on said plan of survey and thence having a width on said cross road of 247.79 feet, by a depth on its northern side line N 68 degrees 52' 17"; 13,417.92 feet and having a depth on its southern side line N 69 degrees 19' 40" E; 13,329.72 feet and having a width at said depth of 359.99 feet; together with all buildings and improvements thereon and all the rights, ways, privileges, servitudes and advantages thereunto belonging or in anywise appertaining, which lot of ground contains 93.328 acres, all in accordance with the plan of Landry Engineering Company, dated May 15, 1959, revised on 7/20/59, 6/6/61, and 7/20/61. There also is specifically included to the owner of Lot No. Three (3), the fee title to that portion of the right of way of the 50 foot private cross road, located in front of Lot No. Three (3) to the rear of the Reine Tract, between the prolongation of the north and south sidelines of Lot 3 to the Reine Tract; together with the fee title to the rights of way of the IC RR; LA & ARK RR, now the Kansas City Southern and the Baton Rouge, New Orleans Airline Highway, and the 3 foot strip of land for sidewalk, adjoing-ing [sic] the Jefferson Highway, as shown on said plan of survey, made by Landry Engineering Company, but subject to all valid existing servitudes of record affecting same; together with and including all alluvion batture and sand bars formed and attached thereto, as well as all accretion to said land by reliction and dereliction thereon, and all additions to said land resulting from the changing of water courses or the opening of new channels, between the division line of Lots 2 and 3 and the division line of Lots 3 and 4 as shown on the plan for the Division of Elvina Plantation, made by Landry Engineering Company from the east right of way line of the Jefferson Highway to the Mississippi River at its mean level. [Emphasis added.]”
The property transferred to the defendant in the 1982 act of sale is described therein as follows:
“THAT CERTAIN LOT OR TRACT OF LAND, Situated in Section 29, T 11 S, R 7 E, in the Parish of St. John the Baptist, East of the Mississippi River at Laplace, Louisiana, and more particularly designated on the Alternate Plan Number 2 for the Division of Elvina Plantation made by Landry Engineering Company, certified by S.F. [sic] Landry, C.E., dated May 15, 1959, revised 7/20/59, 6/6/61, and 7/20/61, and designated on said plan as LOT NUMBER THREE A (3A) of the DIVISION OF ELVINA PLANTATION, which lot of ground has a width on its eastern side line of 261.67 feet; by a depth on its northern side line of 648.12 feet; and bounded by Jefferson Highway on its river side, by a depth on its southern side line of 570 feet, more or less, on a line N 69° 19' 40"; together with all the buildings and improvements thereon and all rights, ways, privileges, servitudes, and advantages thereunto belonging or in anywise appertaining, which lot of ground contains 3.82 acres, more or less, all in accordance with the plan of Landry Engineering Company, dated May 15, 1959, revised 7/20/59, 6/6/61, and 7/20/61. [Emphasis added.]”
Of most importance is the fact that all three acts refer repeatedly to the Landry Engineering Company’s “Alternate Plan No. 2 for Division of Elvina Plantation” as the basis for the descriptions given for Lots 3 and 3-A. (See Appendix for plat.)
Comparison of the 1972 act of donation to the 1962 act of partition reveals several discrepancies:
(1) The partition states that Lot 3 commences 535.56 feet from the northern *486 boundary of the plantation, while the donation gives that figure as 535.58 feet.
(2) The partition describes the north sideline of Lot 3 as “N 68 degrees 52"03"' East 13,393.03 feet,” while the donation describes the north sideline of Lot 3 as “N 68 degrees 52'17"; 13,417.92 feet.”
(3) The partition states that Lot 3 contains 89.508 acres, while the donation states it contains 93.328 acres.
(4) The donation reiterates in full the final paragraph of the partition’s description, which grants to the batture, etc., between Lot 2 and Lot 4, as shown on the Landry plan. The donation, however, omits any mention of Lot 3-A, and changes some phrases in the description of the boundaries of Lot 3.
Comparison of the 1982 act of sale to the 1962 act of partition shows the following discrepancies:
(1) The act of sale omits the surveyor’s measurements for its point of beginning and for the bearing from Jefferson Highway to the rear of the lot, which are stated in the partition.
(2) The sale fails to mention that Lot 3-A is bounded on the east by the 50-foot private roadway, on the north by the Reine Tract and on the south by Lot 4-A.
(3) The sale states the lot has a depth on its southern side line of 570 feet, a figure not given in the partition, which instead states the surveyor’s measurements for the bearing of the south sideline.
LSA-C.C. art. 531 states,
“One who claims the ownership of an immovable against another in possession must prove that he has acquired ownership from a previous owner or by acquisitive prescription. If neither party is in possession, he need only prove a better title.”
See also, LSA-C.C.P. arts. 3651-3654 (pet-itory actions).
Jn this case, both plaintiff and defendant admit neither is in possession of the disputed land; accordingly, they must rely on their titles to prove ownership.
The Civil Code articles on the fixing of boundaries between contiguous properties are relevant here. LSA-C.C. art. 792 states, “The court shall fix the boundary according to the ownership of the parties * * LSA-C.C. art. 793 provides, “When both parties rely on titles only, the boundary shall be fixed according to titles. When the parties trace their titles to a common author preference shall be given to the more ancient title.”
In Sagrera v. Mouton, 180 So.2d 775 at 780 (La.App. 3 Cir.1965), writ refused, 248 La. 797, 182 So.2d 73, the court set out the guidelines for interpreting a property title:
“Under our jurisprudence, the order of importance or value of the various calls which may be included in a description are: (1) Natural monuments; (2) artificial monuments; (3) distances; (4) courses; and (5) quantity. But the controlling consideration in any case is the intention of the party or parties. * ⅜ ⅜ ”
In a petitory action, the validity of the defendant’s title does not come into question until the plaintiff has proved apparently better title in himself. Voisin v. Luke, 341 So.2d 6 (La.App. 1 Cir.1976), writ refused, 342 So.2d 224.
Identification of land by acreage or quantity is the lowest ranking of all; enumerated standards in describing property and other measurements, including description by metes and bounds, control over the acreage designation. Prather v. Valien, 327 So.2d 130 (La.App. 3 Cir.1976), writ denied, 330 So.2d 318. However, where there is an error or ambiguity with regard to description in a deed, an attached map relating to the ambiguity or error will control. Id.
“[W]hen lands are granted according to an official plat of the survey of such lands, the plat itself, with all its notes, lines, descriptions, and land-marks, becomes as much a part of the grant or deed by which they are conveyed, and controls, so far as limits are concerned, as if such descriptive features were written out upon the face of the deed or the grant itself.” Cragin v. Powell, 128 U.S. 691, 696, 9 S.Ct. 203, 205, 32 L.Ed. 566 (1888).
*487 Although the property description in the act of donation to the plaintiff and her brothers contains no mention of Lot 3-A, the plaintiff points out that the amount of acreage is stated as 93.328, which is the total acreage of Lot 3 and Lot 3-A combined. The plaintiff contends the total acreage, together with the transfer of the accessory rights, including the Jefferson Highway sidewalk area (which is located within Lot 3-A according to the Landry map), indicate the donor’s intent to transfer Lot 3-A as well.
We do not agree. Applying the law and the jurisprudence, the property description in the donation, when compared to the Landry plan, plainly transfers only Lot 3 and the accessory and batture rights that Walton Montegut received in the 1962 partition. It does not describe Lot 3-A and, except for the acreage description, contains neither measurements nor boundary marker references that can be interpreted as including Lot 3-A.
The plaintiff asserts that the conveyance, in the donation, of the three-foot strip of land for sidewalk along Jefferson Highway indicates the donor’s intent to convey Lot 3-A, because Lot 3 is not contiguous to Jefferson Highway, but instead is separated from it by Lot 3-A and a 50-foot private road.
We find no merit to this argument. The description of the accessory rights in the donation included the rights-of-way for several roadways and railways, as well as the riparian rights, but specifically stated, “[T]he fee title to * * * the 3 foot strip of land for sidewalk, adjoinging [sic] the Jefferson Highway * * *,” which must be interpreted as conveying only that three-foot strip of land. Admittedly, it is curious that Walton Montegut donated the sidewalk strip along Jefferson Highway, which is contiguous to Lot 3-A, separately from the transfer of Lot 3-A—but we cannot find that transfer of the sidewalk area indicated any intent to transfer the entire Lot 3-A.
According to the Landry plat, the Jefferson Highway sidewalk area is the only one of the accessory rights named within the original partition that is located within the boundaries of Lot 3-A; all the other rights are located either on Lot 3 or on the Jefferson Highway-to-river area. The inclusion of the sidewalk may have been in error or it may have been deliberate. It does not, however, evince any intent to transfer Lot 3-A.
Accordingly, we conclude that the plaintiff has failed to prove her title to Lot 3-A. Thus, there is no merit to her claim that her title is the “more ancient,” because her title does not include Lot 3-A.
Because it can be said, however, that Minette Millet Montegut’s title to Lot 3-A encroaches on the plaintiff’s title to the three-foot sidewalk strip on Jefferson Highway, we will amend the judgment accordingly.
The plaintiff also complains that the trial court failed to order John and Criswell Montegut to present evidence. In fact,, because John and Criswell declined to join with the plaintiff in asserting this claim, they had no burden of proof to bear and could not be compelled to present evidence. Thus, the trial court did not err.
Finally, we attribute no weight to the plaintiff’s evidence that she has paid her share of taxes on the land and that the tax payments were for both Lot 3 and Lot 3-A. Although the payment of taxes is an indicium of civil possession and, thus, can be used as evidence in a possessory action, it cannot override the wording of a deed when the plaintiff claims through the deed rather than through possession.
Having found that the plaintiff’s claim to title to Lot 3-A is insufficient, we need not examine the validity of the sale to the defendant (which the plaintiff claims is invalid for nonpayment of the purchase price). See Voisin v. Luke, supra.
For the foregoing reasons, the judgment of the district court is amended in part, in the following respect: There is judgment herein in favor of the plaintiff, Marjorie Montegut Sutton, and against the defendant, Minette Millet Montegut, finding that the Sale of Property by Walton J. Monte-gut to Minette Millet Montegut, wife of Criswell R. Montegut, recorded at MOB *488 161, Folio 542, and COB 196, Folio 545, Entry Number 99213, Parish of St. John the Baptist, contains an incorrect property description. The description therein is hereby corrected to read as follows:
THAT CERTAIN LOT OR TRACT OF LAND, situated in Section 29, T11S, R7E, in the Parish of St. John the Baptist, East of the Mississippi River at Laplace, Louisiana, and more particularly designated on the Alternate Plan Number 2 for the Division of Elvina Plantation made by Landry Engineering Company, certified by S.K. Landry, C.E., dated May 15, 1959, revised 7/20/59, 6/6/61, and 7/20/61, and designated on said plan as LOT NUMBER THREE-A (3-A) of the DIVISION OF ELVINA PLANTATION, which lot of ground has a width on its eastern side line of 261.67 feet, by a depth on its northern side line of 648.12 feet and a depth on its southern side line of 570 feet, more or less, on a line N69° 19'40"E, and is bounded on its west side by the 3-foot strip of land for sidewalk adjoining the Jefferson Highway, as shown by said plan of survey; together with all the buildings and improvements thereon and all rights, ways, privileges, servitudes, and advantages thereunto belonging or in anywise appertaining; which lot of ground contains 3.82 acres, more or less, all in accordance with the plan of Landry Engineering Company, dated May 15, 1959, revised 7/20/59, 6/6/61, and 7/20/61.
In all other respects the judgment of the district court is affirmed. Each party is to pay her own costs for this appeal.
AMENDED IN PART, AFFIRMED IN PART, AND RENDERED.
*489 [[Image here]]