CULPEPPER, Judge.
This was originally a petitory action which by agreement and stipulation of the parties was converted into a boundary action. From an adverse judgment in the lower court, the plaintiff has appealed.
The record shows that by a deed dated April 10, 1946, and recorded on April IS, 1946, in Conveyance Book F-8, Page 562 of the records of Acadia Parish, Louisiana, the plaintiff, Clovis A. Kennedy, acquired from Mrs. Bertha Webb Levy the following described property located in Acadia Parish:
“Those certain lots or parcels of ground situated in the Town of Rayne, Acadia Parish, Louisiana, known and *248 described as the western 80 feet of lots one, three, five and seven (W 80' of L 1, 3, S and 7) of block seventy-two (72) of the Cunningham Division of the Town of Rayne, Acadia Parish, Louisiana, as per plat of said Town on file in office of Recorder for Acadia Parish, Louisiana.”
On April 29, 1954, Mr. Kennedy sold off part of this property to James K. Bar-ousse, who is the plaintiff in the companion suit entitled Barousse v. Chappuis, La.App., 125 So.2d 251. The two cases were consolidated for purposes of trial in the lower court and for purposes of consideration on appeal.
The properties owned by the plaintiffs Kennedy and Barousse are adjacent on the east to property which, at the time of the filing of this suit, belonged to Archibald A. Chappuis, and is described as follows:
“That certain parcel of ground situated in the Cunningham Division, City of Rayne, Acadia Parish, Louisiana, together with all buildings and other improvements thereon and thereto belonging, known and designated as Lot Nos. Two, Four and Six, (2, 4 and 6) and the eastern 40 feet of Lots Nos. One, Three and Five (E 40/ of 1, 3 & 5) of Block No. Seventy-two (72) of said division, as per plat on file in the office of the Clerk of Court of Acadia Parish, Louisiana.”
The boundary line between the two above-described tracts of land is that which is in dispute in this litigation. The plaintiffs attempted to establish the boundary by the testimony of Paul John Letz, a registered surveyor, whose survey is shown by a plat dated October, 1951, and filed in evidence. In making this survey in 1951, Mr. Letz testified that he used a previous survey of which he had a plat in his office and started at a point in the center of a railroad track which apparently runs north and south some distance from the property in question. From this point in the center of the railroad track, Mr. Letz ran to a point marked by several tiles imbedded in the sidewalk at the southeast corner of Murvine-Kahn’s Store in Rayne. Mr. Letz testified that these tiles were removed five or six years ago when the store was remodeled. Then, continuing to follow his old plat from his office files, Mr. Letz ran to what he found to be the southeast corner of Block 72 of the Cunningham Addition, which he found to be 121^' east of the sidewalk which encircles said Block 72. From this point, which he found to be the southeast corner of Block 72, Mr. Letz thence ran east a distance of 80' to establish the depths of the plaintiffs’ properties and the boundary line between the properties of the plaintiffs and the defendant. It is noteworthy that if we use the plat prepared by Mr. Letz the plaintiffs would both receive the full depth of SCK specified in their respective deeds, but the defendant will not because his property will encroach upon the sidewalk along his eastern boundary.-
We note particularly that, although Mr. Letz at. one point in his testimony stated that he was following the original plat of the survey of Cunningham Addition, no such original plat was filed in evidence and later testimony showed that no such plat is in existence. Furthermore, the previous plat from his office files which Mr. Letz stated that he used in preparing his 1951 survey was not filed in evidence and there is nothing in the record to show its authenticity. We, therefore, must necessarily find that Mr. Letz, in making his survey, started at a point of beginning located outside Cunningham Addition and not authenticated in any way by showing that it was an original artificial monument used in the subdivision of Cunningham Addition.
Mr. Chappuis sought to prove his version of the boundary line in question by the testimony of Frank R. Lyman, a registered surveyor, who surveyed this property on April 21, 1959, as shown by the plat thereof filed in evidence. Mr. Lyman’s findings and the method which he used to *249 make his survey are set forth in his testimony, as follows:
“A. Well, in connection with the survey in that section of Rayne * * in previous surveys of that area * * I have found that there is a discrepancy on the ground in the layout of the streets with a rectangular layout as indicated on plats available in that area indicating that at some time in the far past, either at the time the property was originally laid out or shortly thereafter, in any event at the time it was developed, that some of the streets were run off and they are not at right angles to the railroad track, that they run off towards the west from the line perpendicular with the railroad track, so in connection with this survey I made an attempt to develop from the evidence of the sidewalk and a few old fences in that vicinity the general pattern of those streets and I have indicated that on this plat of survey and it indicates that in the block between Cunningham Street and Parkerson Street there is about 8' of excess comes in in that block than the other blocks for approximately the width that would be called for up until Adams Avenue and in the first block west of Adams Avenue there is a shortage of between 7 and 8' so that those three streets, Parkerson Street, Polk Street and Adams Avenue do not run perpendicular to the railroad track. Now, in surveying the Block 72, in place of trying to develop it from the points down at the railroad track, from the established markers or accepted markers in the vicinity of the railroad track, I developed the pattern within the block itself which would leave a width within that block of 241.2' if you leave the described 80' by Adams Avenue and 60' for Polk Street. It leaves a net distance of 241.2'. The southwest corner would be 5.7' east of the east line of the sidewalk on Adams Avenue and the southeast corner would be 1.8' west of the west edge of the sidewalk on Polk Street.
“Q. Are you familiar with the old plats of survey of the Cunningham Addition? A. In connection with this survey, I made a search of the Clerk’s office for a plat of the Cunningham Subdivision.
“Q. What did you find? A. I found no plat that shows this particular area of the Cunningham Addition on file now. Of course, some of those plats may have been lost out of the book but they are not of record at the present time. The only one that I found running north of the railroad track in the Cunningham Addition is the resurvey of the Town of Rayne that was made, I forget whether the date is 1903 or 1906, by Bottinger, and he came up as far as Leslie Street into the Cunningham Addition.
“Q. How many feet is there from inside of the sidewalk to inside of the sidewalk in Block 72 fronting on North Street? A. From inside the sidewalk to inside the sidewalk, 248.7'.
“Q. Actually there is more property there than ordinarily there would be in a block * * * in a 240' block? A. Yes.”
From the above-quoted testimony, we see that Mr. Lyman, on finding that the original survey of Cunningham Addition as well as the original markers placed on the ground at the time Cunningham Addition was first surveyed were non-existent, accepted the streets and sidewalks which encircle Block 72 as being correctly laid out and then using the existing fence lines and buildings as further evidence of boundaries he prepared his plat. Between the sidewalks on the east and west sides of Block 72 Mr. Lyman found an excess of approximately 8' over and above the amount necessary to give to plaintiffs and defendant the full amount of property described in their respective deeds. Taking into con *250 sideration the existing buildings, fence lines and other artificial monuments located within Block 72, Mr. Lyman apportioned this 8-foot excess by setting the property line 5.7 feet back from the sidewalk on the west side of Block 72 and 1.8 feet back from the sidewalk on the east side of Block 72 which still left 241.2 feet (an excess of 1.2 feet) to be apportioned between plaintiffs and defendant. The method used by Mr. Lyman to make this apportionment is described in his testimony, as follows:
“Q. Mr. Lyman, would you explain this 80.2' on the plat? A. On the south line of that block I find 241.2' is the width of that block and then proportioning that out between the 80' that is under one ownership and 160' on the other makes them come out 160.8' for the Chappuis property and 80.4' on the Kennedy property.
“Q. Mr. Lyman, is it customary to use old monuments, such as fence posts, fence lines, in making a plat of survey as you did? A. In making a survey you can have a number of different points of evidence that all fit together to make a complete picture of what was there. It depends on what is available.”
It is our opinion that in this situation where the original plat of the subdivision of Cunningham Addition was either lost or non-existent and where the original stakes or other artificial monuments which were placed on the ground at the time Cunningham Addition was originally laid out are also either lost, non-existent or uncertain, then the method used by Mr. Lyman in preparing his survey according to the existing streets, sidewalks, buildings and fences found inside Block 72 itself is the correct procedure. The general rule of law concerning this concept is set forth in 11 C.J.S. Boundaries § 108, pp. 703-704, as follows:
“Where monuments or marks called for in a deed or grant are lost or otherwise uncertain, they must be established by the best evidence of which the nature of the situation is susceptible. In consequence their location may be proved by parol evidence, the admission of such testimony not being in contravention of the statute of frauds. Considerable latitude in the character of evidence held admissible exists. Thus, the testimony of witnesses who have seen the monuments and remember their location is competent. In default of establishment by such testimony, other competent evidence relating to the issue may be considered, as, for instance, the location of junior surveys which call for the same monument of marks; surrounding circumstances, such as the actual condition and situation of the land, buildings, passages, watercourses, and other local objects; evidence of other undisputed lines of known distance from the one in dispute; that the boundary lines of fields and highways, as established by the early settlers are in harmony with disputed monuments; * * * ”
This rule of law was followed by our Supreme Court in the case of Barker v. Houssiere-Latreille Oil Co., 160 La. 52, 106 So. 672, 674, which involved a boundary dispute where the markers of the original survey could not be found and the Court held, as follows:
“ * * * Under this state of facts, the trial judge was justified in accepting points within the Elms survey as determinative of the correct location of the lines between the respective lots of plaintiff and defendant company, as it is well settled that in the re-establishment of lines and corners in a given subdivision, monuments within said subdivision should be accepted as correct locations, in preference to monuments in a subsequent survey thereof, or in a subdivision of an adjoining tract. Hall v. Caplis, 109 La. 483, 33 So. 570; Cage v. Danks, 13 *251 La.Ann. 128; Johnson-Smith on Surveying, § 153, p. 190. par. 12.”
It is also well settled in our jurisprudence that where a surplus of property is found by the surveyors it should be proportionately divided among the property owners in the absence of any other controlling question of title. See Thomas et al. v. Patenotte, La.App., 47 So.2d 62; 11 C.J.S. Boundaries § 124, pp. 737-739.
In his written reasons for judgment, the judge of the trial court accepted the survey which was made by Mr. Lyman establishing the boundary line in question and it is our opinion that he was correct. 'We, therefore, affirm the judgment of the lower court. All costs of this appeal are assessed against the plaintiff.
Affirmed.