JiMURRAY, Judge.
Plaintiffs/appellees, Marilee V. Deano, Ronald A. Vallette, and Alice V. Bonomo (hereafter the Vallettes) sued defendant/appellant, R.A. Brouillette, to judicially establish the boundary between their contiguous properties, contending that a fence erected by Mr. Brouillette in 1993 encroaches upon their property some 35 + feet. Mr. Brouil-lette defended, denying the encroachment and, alternatively, pled thirty years acquisitive prescription.
The trial court rendered judgment in the Vallettes’ favor, dismissed Mr. Brouillette’s plea of acquisitive prescription, and ordered him to reposition his fence in accord with boundaries fixed in an August, 1993 survey drawn by Steven Estopinal.[1]
Mr. Brouillette appeals, assigning four instances of error. We affirm, but remand for the court to amend the judgment to include a legal description of the property in question, pursuant to La.Code Civ.Proc. art. 2089.
|2In April 1959, R.A. Brouillette purchased a tract of ground from Marcus and Bridget Vallette, parents of the plaintiffs/appellees herein. This sale was “less and except” a portion which Mr. and Mrs. Vallette retained and lived on until 1989, when Mr. Vallette died. In 1990 the Vallettes acquired the property by judgment of possession from their father’s succession. The area in dispute is the northern boundary of the Val-lettes’ property[2], and correspondingly, the southern boundary of the Brouillette property. Trial testimony established that the disputed area was divided through the years by a number of fences spanning the width of the property. This dispute arose in 1993 when Mr. Brouillette erected a fence approximately 20 feet south of the location of the original fence which stood at the time of the 1959 sale.
In his first two assignments of error, Mr. Brouillette objects to the manner in which the court fixed the boundary between the properties.
The source of the conflict between the parties is the language in the Vallettes’ property description. The pertinent part reads:
... a certain tract or portion of ground ... on the left descending side of Bayou Terre aux Bouefs at about four miles from the Mississippi River and measuring 62 feet front on the left descending side of Bayou Terre aux Bouefs; same width in the rear by depths between equal and parallel lines of 350' ...
The parties differ on the location of the point at which the above measurement should begin.
Mr. Brouillette argued at trial and on appeal that the property description should be construed literally, and that all measurements should commence at the bank of Bay *1285 ou Terre aux Boeufs. He contends that the property line falls within La section he has occupied and maintained from the date of his 1959 purchase, if the measurements are applied literally.
Steven Estopinal, land surveyor and civil engineer, testified regarding a survey of the Vallette property by him in August 1993. His 1993 survey is in evidence.
Mr. Estopinal recounted how he performed measurements and plotted points on the survey: he located the front meander line, a point used as the bank of the bayou which was established by government land surveyors around 1835[3]; he then measured 350' from this point, in a northerly direction. He noted that the property line fell some 35 to 40 feet north of an old fence on the Vallette property. Because he knew from personal knowledge that the fence had been standing a long time, the discrepancy led him to suspect that the person who created the deed for the Vallettes’ property was not familiar with the practice of measuring from the meander line. To confirm his suspicion, he measured 350' in a northerly direction from the present day bank of the bayou and found that that measurement fell 10 to 15 feet short (or south) of the old fence. He concluded that whoever created the Vallettes’ deed was unsophisticated in measurements and described the property incorrectly from the point where the bayou becomes water rather than from the meander line.
In conclusion, Mr. Estopinal testified that when the description in the Vallettes’ title is plotted from the meander line, the correct northern boundary line |4of the property extends approximately 39.5 + feet north of the old fence[4], bisecting a house trailer owned by Mr. Brouillette and indicated on his survey.
Mr. Estopinal examined a survey done by Mr. Brouillette’s expert in December 1993. It was his opinion that this survey erroneously measured from the water’s edge rather than the meander line, which accounted for the disputed area.
Mr. Estopinal also identified a 1964 survey that was done by his father at Mr. Brouil-lette’s request. He pointed out that his 1993 survey conformed with the 1964 survey in that both surveys plotted linear measurements from the meander line.
Joseph F. Ruello, land surveyor, testified on behalf of Mr. Brouillette. Mr. Ruello informed the court that he surveyed the Brouillette property in December, 1993, starting at the left bank of Bayou Terre aux Bouefs, the bank line, not the meander line. He testified that this method confirmed the position of the new fence erected in 1993 by Mr. Brouillette as the correct boundary.
Under cross examination, Mr. Ruello admitted that he could not be certain that the point at which he began his measurement was the same point used in 1959, when Mr. Brouillette acquired the property, or that his measurement at the bank line was or was not the meander line. He testified that he employed the bank line method because he surveys according to title, and Mr. Brouillette’s title called for measurement beginning “on the left descending side of the bayou”, which in his | ¡¡opinion meant the bank line. Moreover, he testified that the choice of employing the bank line method versus the meander line is a matter of opinion.
It is apparent that the method used by Mr. Estopinal employed acceptable surveying principles. He started his survey from a historical and constant reference point, the meander line. The trial court appears to have given his opinion more weight than that of Mr. Ruello.
Where there are two permissible views of the evidence, the factfinder’s choice *1286 between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
In a boundary action, the boundary location is a question of fact to be determined by the trier of fact, and such determination should not be reversed on appeal in the absence of manifest error. Richard v. Thierry, 509 So.2d 604 (La.App. 3rd Cir.1987).
We have considered the testimony of the experts and conclude, as the did the trial court, that the front meander line was the proper point from which to commence measurement. We find no error in the court’s method of fixing the boundary.
In his next assignment of error, Mr. Brouillette argues that the court erred in not recognizing his ownership of the disputed portion of ground by virtue of 10 or 30 years acquisitive prescription.
Acquisitive prescription is defined by the Civil Code as “A mode of acquiring ownership or other real rights by possession for a period of time.” La.Civ.Code Ann. art. 3446 (West 1982). Ownership of immovable property may be acquired by possession for either ten year or thirty years. The prerequisites for ten years acquisitive prescription are: “possession for ten years, good faith, just 16title and a thing susceptible of acquisition by prescription.” La.Civ.Code Ann. art. 3475 (1982). Thirty year acquisitive prescription requires neither good faith nor just title, but merely possession for thirty years. La.Civ.Code art. 3486 (West 1982).
Mr. Brouillette testified that there was a fence separating his and the Vallette’s property when he purchased his tract of land from the elder Mr. Vallette in 1959. The evidence is undisputed that Mr. Vallette removed this fence sometime prior to his death in 1989, but Mr. Brouillette could not establish a specific date.
Shortly after Mr. Brouillette purchased the property in 1959, he erected a fence approximately 20 feet north of the fence that stood at the time of his purchase. This fence, which is shown on the 1993 Estopinal survey as commencing at the “pecan tree” and spanning the width of the property, remained standing until October, 1993.
At that time Mr. Brouillette moved it approximately 20 feet south to the location of Mr. Vallette’s original 1959 fence. Mr. Brouillette testified that he replaced the old fence after the 1993 Estopinal survey because he considered the surveyor’s measurements erroneous. He ignored the 1964 survey, which he admitted was commissioned by him, and which conformed to the 1993 Esto-pinal survey, because he thought it was not “good”.
It was Mr. Brouillette’s testimony that he and Mr. Vallette had a good relationship, and that he erected and dismantled fences and structures on the property over the years, all with Mr. Vallette’s knowledge. He testified that he had maintained the disputed property for his own use over the years, and that there was no dispute until the Vallettes were ready to sell the property.
|7The trial court found that Mr. Brouillette failed to prove acquisitive prescription. The record supports that finding.
Mr. Brouillette did not acquire by 10 years good faith possession. By virtue of the 1964 survey, he was aware that the fence standing at the time of his acquisition incorrectly marked the boundary between the properties. He could not reasonably presume to be the owner of the disputed area when the survey revealed otherwise.
Nor did he acquire by thirty years actual possession. As the trial court stated in its reasons for judgment:
Mr. Brouilette stated that Marcus Vallette torn down the outer fence some time before he died in 1989. Mr. Vallette’s tearing down of the fence served as an interruption in Mr. Brouilette’s possession of this larger area. Mr. Brouilette could not provide dates for the Court to rely upon for the commencement of acquisitive prescription, nor could he be more precise as *1287 to the date of the occurrence of the interruption. Mrs. Bonomo’s testimony provided no guidance to the Court in this regard. She stated that she had not lived on the Vallette property since 1967 or 1968 and to the Court, seemed unfamiliar with the property. For these reasons, the Court finds insufficient evidence to prove possession of this entire area for thirty years without interruption. However, a second fence running the width of the property was also erected by Mr. Brouilette around the time of the sale. Mr. Vallette did not tear down his fence. The Court finds this fact significant. When Mr. Vallette tore down the outer fence Mr. Brouilette continued to possess the property west of the “second fence” so that his possession of this smaller area was not interrupted. For over thirty years, Mr. Brouilette maintained the area as his own property. Beside cutting the grass and general upkeep of the area, Mr. Brouilette maintained a chicken coop for a number of years. In addition, for the past ten years, he has had a mobile home located in that area. The facts indicate that he intended to possess the area as owner.
The testimony revealed that in October of 1993 Mr. Brouilette took down this fence and erected another near the location of the previous ‘outer’ fence so as to | g'recapture’ the larger area. The location of this third fence is irrelevant, in that, Mr. Brouilette could not ‘recapture’ the possession. The interruption would cause prescription to begin anew. The fact that he removed the second fence in 1993 does not divest him of rights he previously acquired by possession for thirty years without interruption. Therefore, the Court finds that the location of the second fence constitutes the boundary. This fence ran across the width of the property from the pecan tree to a taller thinner tree abutting the ‘Cantrell Property’. It is labeled ‘fence’ on the 1993 Estopinal survey plat marked as ‘Stipulation Number Three.’
Finally, Mr. Brouillette argues that the trial court erred in the manner and form of the judgment rendered in that there is no legal description in the judgment detailing the boundaries as found by the court. We agree.
La.Code Civ.Proc. art. 2089 mandates that all judgments and decrees that affect title to immovable property describe with particularity the immovable property affected. The purpose of this requirement is to ensure that the public in general, and title examiners, successful litigants, officials charged with executions of judgments and surveyors in particular, accurately can deal with the immovable property. Hurst v. Ricard, 558 So.2d 1269 (La.App. 1 Cir.1990). Therefore, we remand this matter to the trial court to amendment its judgment to include a legal description of the property in question. In all other respects, the judgment is affirmed.
AFFIRMED AND REMANDED.
WALTZER, J., concurs with reasons.
*1288 [[Image here]]

. A copy of this survey is attached to the opinion.

. In reasons for judgment, the trial judge incorrectly refers this point as the "western” bound-

. He testified that this fixed point is important to assure a constant point of reference for measurements because the “bank" of the bayou changes with the course of time. All surveys done by his office in this area begin by fixing the meander line.

. It appears from the testimony that Mr. Brouil-lette erected what is referred to as the "old” fence in 1964 or 1965. That "old” fence is indicated on the 1993 Estopinal survey and shows a “pecan tree on line”. Mr. Brouillette tore this "old” fence down in October, 1993, and erected a new fence some 20+ feet south of it.