PAUL A. BONIN, Judge.
11 There are ten lots of equal width, The most westerly one, Lot 26, is owned by Patsy and James Hooper, the plaintiffs. The other nine, Lots 27 through 35, are owned by Hero Lands Company, one of the defendants. According to the titles, the width of each lot is one arpent or 192 feet, which would mean that the total distance should be 1920 feet from the western boundary of Lot 26 to the eastern boundary of Lot 35. But the actual distance between the boundaries is 2040.77 feet, a difference of 120.77 feet.
This difference is the genesis of this controversy. When Allen Hero authorized the Plaquemines Parish Government to dig a thirty-five foot wide drainage canal on the company’s property, he directed that it be situated at the most westerly boundary of Lot 27, a boundary line shared with the Hoopers’ Lot 26. In situating the proposed canal, Hugh McCurdy III, a professional surveyor, measured to the boundary line for Lots 26 and 27 using the title measurement of 192 feet. Based upon that measurement, Plaquemines Parish entered onto the site and began preparations for digging the canal, including the clearing of trees.
|2The Hoopers sued the company, the parish, Mr. Hero and the surveyor, claiming that they had trespassed onto the Hoo-pers’ property. In addition to the trespass *969 action, the Hoopers asserted a possessory-action and a boundary action along with their request for injunctive relief. Further, the Hoopers argued that all of the canal preparations occurred on their property either because of their title to Lot 26 or because they had acquired some or all of Hero’s Lot 27 by ten-year or thirty-year prescription.
The company and Mr. Hero filed a motion for summary judgment by which they sought, among other relief, the judicial fixing of the boundary line for Lots 26 and 27. They also sought a finding that the Hoopers had waived their possessory claims by improperly cumulating a posses-sory and petitory action. The trial judge denied the motion in part, finding that the Hoopers had not improperly cumulated actions and thus did not waive their posses-sory claims. The judge granted the motion in part finding that the Hoopers had not acquired the property by either a ten—or thirty-year acquisitive prescription. To set the boundary, the trial judge apportioned the 120.77 feet equally among the ten lots, with 12.077 feet per lot, resulting in each lot having an actual width of 204.077 feet. The trial judge then fixed the boundary between Lots 26 and 27 as 204.077 feet, beginning from the dividing line between Lots 25 and 26 and extending eastward. In partially granting the summary judgment, the trial judge recognized that the canal preparations would have been conducted, to some extent, on the supplemental 12.077 feet of the | ¡¡Hoopers’ Lot 26 and, accordingly, reserved the trespass action for a trial on the merits.
The judgment was subsequently amended for the sole purpose of recognizing that the Hoopers had proven a right to possess the property, in light of their demand for relief on the possessory claim. The remainder of the judgment was left unchanged. The Hoopers appealed.[1]
We have reviewed de novo the resulting partial summary judgment and conclude that the Hoopers, by cumulating both pos-sessory and petitory claims, converted their suit to a petitory action, thereby waiving their possessory claims. Thus, the trial judge was legally incorrect by finding otherwise, and consequently, his ruling finding the Hoopers proved a right to possess is without effect. In all other respects, we conclude the trial judge was legally correct both in fixing the boundary and in rejecting the Hoopers’ alternative contentions that their title or possession trumped Hero’s title ownership. Accordingly, we amend the judgment to delete that portion which recognizes the Hoopers’ possession and, as amended, affirm the judgment and remand for further proceedings in the trial court.
We explain our decision in considerable detail below.
Jii
In this Part, considering that we are reviewing a ruling on summary judgment, *970 we describe the undisputed facts, beginning with an historical account of the property.
A
The ten adjacent lots in this case are part of the former plantation of Pierre Cazelar (also spelled Cazalar, Cazalard, and Cazelard in the record). The plantation was subsequently acquired by the City of New Orleans, which commissioned Louis Pilie, a surveyor, to subdivide the property into forty-four lots spanning across Orleans, Jefferson, and Plaque-mines Parishes. The Pilie plat does not contain any specific measurements, but, it does indicate that each lot is of equal width. In 1860, the city held a public auction sale, the documentation of which reflects, with reference to the Pilie plan, that each lot was intended to be one ar-pent, or approximately 192 feet, in width. At the sale, the Hoopers’ ancestor in title, Alphonse Camus, purchased Lots 17-26, and Hero’s ancestor in title, Pierre Caze-lar, Jr., purchased Lots 27-44. In both respective deeds to Camus and Cazelar, the lots are described as “measure[ing] each one arpent front on the public road.” In subsequent sales transferring Lot 26 and Lots 27-35 throughout the years, the deeds consistently describe the ten lots in measurements of arpents and refer to the Louis Pilie plat of 1860.
Eventually, Burmaster Land & Development Company (“Burmaster”) acquired Lot 26 and Hero Lands Company (“Hero”) acquired Lots 27-35. |,^Importantly for our purposes, from 1974 until December 31, 1989, Hero leased to Burmaster property beginning at the dividing line between Lots 26 and 27 and extending up to 150 feet easterly into Lot 27.
Burmaster later subdivided Lot 26, and in 1992, sold tracts B and C of Lot 26 to the Hoopers. The dividing line between these two tracts was the line between Jefferson and Plaquemines Parishes, and the tracts ran the full width of Lot 26. The deed contains no mention of arpents; rather, it states that the width of Lot 26 is 192 feet. The Hoopers, in agreement with Burmaster, declined to request a survey prior to the conveyance. The Hoopers’ deed contains a warranty of title as to the tracts of Lot 26, but also conveys without warranty, “all property that Burmaster Land & Development Co., Inc. may own lying easterly” of Lot 26.
Over the years, surveys of the property have revealed that the distance between the western boundary of Lot 26 and the eastern boundary of Lot 35 is actually 2040.77 feet rather than ten arpents (1920 feet), measured by distinct stone monuments at either end, which have been recovered by several different surveyors.
There is, moreover, no boundary agreement between the parties as to the line between Lots 26 and 27. Cfi La. Civil Code arts. 789, 795.[2]
[[Image here]]
In this Part, in light of the appellants’ several complaints about procedural errors, which are more fully discussed in Part VI, post, we begin with a discussion about the nature of this lawsuit, and the intersection between possessory, petitory, and boundary actions and, specifically, how they affect the case herein.
*971 A
As an outset matter, we are impelled to point out that “[t]he ownership and the possession of a thing are distinct.” La. Civil Code art. 481. “Ownership exists independently of any exercise of it and may not be lost by nonuse.” Ibid. “Ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law.” La. Civil Code art. 477. “Possession is the detention or enjoyment of a corporeal thing, movable or immovable, that one holds or exercises by himself or by another who keeps or exercises it in his name.” La. Civil Code art. 3421.
The Louisiana Supreme Court has emphasized the distinction between real actions for possession and ownership and explained that a possessory action protects possession and a petitory action protects ownership. See Todd v. State, Through Dept. of Natural Res., 474 So.2d 430, 432-33 (La.1985). The rights and burden of proof attendant to a possessory action are distinct and unique from those in a petito-ry action. See ibid. A plaintiff is thus prohibited from cumulating possessory and petitory actions in the same suit, or pleading them in the 17alternative, and if he does, then the possessory action is waived and the suit proceeds as a petitory action. See La. C.C.P. art. 3657; see also Phipps v. Schupp, 14-0672, p. 30 (La.App. 4 Cir. 3/18/15), 163 So.3d 212, 229, n. 10 (plaintiff filed possessory action; subsequent pleading asserting ownership, even if inadvertent, converted it to petitory action); but see Plaquemines Parish Gov’t v. Schenck, 15-0127, 15-0128, 15-0129 (La.App. 4 Cir. 12/9/15), 182 So.3d 1122 (finding legal ownership as the sole issue in appeal from judgment on possessory action), writ denied, 16-0045 (La.2/26/16), 187 So.3d 1004, 2016 WL 903014. Such rules result from the intention to keep the trial of the issues of possession and ownership as separate as possible. See La. C.C.P. art. 3657, Official Revision Comment (a).
In their third amended petition, intended as a substitute for all prior petitions, the Hoopers contended that they alone were in possession of surplus property, resulting from the 120.77-foot differential, and had satisfied the requisites to maintain the possessory action. See La. C.C.P. art. 3658. Thus, the Hoopers prayed for a judgment in their favor recognizing their right to possess the property up to a fence line. Moreover, they sought a judgment in their favor recognizing the boundary between Lots 26 and 27 as the line up to the fence, which would incorporate the entirety of the 120.77-foot disputed property.
Importantly, for our purposes, the Hoo-pers asserted that the surplus property had been conveyed to them by title, as evidenced by the phrase “one arpent more or less,” the “more” being the 120.77 feet. In an apparent alternative argument, the Hoopers claimed that they, together with their ancestors-in-title, had possessed the 1¡¡surplus land for either a ten—or thirty-year prescriptive period. Thus, the Hoo-pers effectively claimed ownership of the property by title and/or acquisitive prescription.
B
A possessory action is “one brought by the possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed.... ” La. C.C.P. art. 3655. To maintain the possessory action, the possessor must satisfy four requisites: (1) he must have had possession of the property at the time of the disturbance; (2) he and his ancestors-in-title had such possession without inter *972 ruption for more than a year immediately prior to the disturbance; (3) the disturbance was one in fact or law; and (4) the possessory action was instituted within a year of the disturbance. See La. C.C.P. art. 3658. A disturbance in fact is, in relevant part, a “physical act which prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly....” La. C.C.P. art. 3659. Importantly, in a possessory action, the ownership or title of the parties is not at issue, and therefore evidence of ownership or title to the property is, as a general rule, not admissible. See La. C.C.P. art. 3661.
A petitory action, conversely, is “one brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right therein, against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiff’s oionership.” La. C.C.P. l9art. 3651 (emphasis added). The burden of proof in a petitory action depends on the defendant’s possession of the property, or lack thereof. If the defendant is in possession, the plaintiff must prove that he has acquired ownership from a previous owner or by acquisitive prescription, and if the defendant is not in possession, then the plaintiff must prove a better title than the defendant. See La. C.C.P. art. 3653. Established jurisprudence requires a more onerous burden if the defendant is found to be hi possession of the property; that is, the plaintiff must prove “title good against the world.” Pure Oil Co. v. Skinner, 294 So.2d 797, 799 (La.1974). “Title good against the world” has been interpreted as proof of an unbroken chain of valid titles from the sovereign, or proof that the plaintiff has acquired the property by ten—or thirty-year prescription. See Cuny v. Quinn, 03-0649, p. 5 (La.App. 5 Cir. 10/28/03), 860 So.2d 232, 235; see also Yiannopoulos, Civil Law Treatise—Property, § 11:10, pp. 607-08 (5th ed.2015).
A boundary action is a real action distinct from both a possessory and a petitory action. See La. C.C.P. arts. 3691-3693; see also Yiannopoulos, § 11:31, p. 645. In such an action, the court “shall fix the boundary according to the ownership of the parties,” La. Civil Code art. 792 (emphasis added), and if neither party proves ownership, the boundary must be fixed according to possession. See ibid. See also La. C.C.P. art. 3693 (“After considering the evidence, including the testimony and exhibits of a surveyor or other expert appointed by the court or by a party, the court shall render judgment fixing the boundary between the contiguous lands in accordance with the ownership or possession of the parties.”).
| inBecause a judgment in a boundary action necessarily involves a preliminary determination of ownership, it arguably cannot be cumulated with a possessory action. See La. C.C.P. art. 3661 (“In the possessory action, the ownership ... of the parties ... is not at issue.”); see also Kadair v. Hampton, 13-1171, p. 14 (La.App. 1 Cir. 7/10/14), 146 So.3d 694, 704 (“[Pjroof of ownership is a necessary prerequisite to establishing the boundary”); Harvey v. Harvey, 345 So.2d 113, 115-16 (La.App. 1st Cir. 1977) (affirming trial court’s grant of exception of improper cumulation of pos-sessory and boundary actions).[3] But see Fontenot v. Chapman, 377 So.2d 492, 495-96 (La.App. 3rd Cir.1979) (defen- *973 dant’s reconventional demand seeking a fixing of the boundary line did not convert possessory action into petitory action). Notably, however, a boundary action may be cumulated with a petitory action, as both seek to determine ownership. See Kadair, 13-1171, p. 14, 146 So.3d at 704; Yiannopoulos, § 11:31, p. 646, n. 6 (citing cases).
C
Here, the Hoopers sought to bring a possessory and boundary action, and additionally asserted ownership of the disputed property by either title or acquisitive prescription. The parties and the trial judge treated this suit as a possessory action, as evidenced by the ruling on summary judgment, wherein the | njudge found that the Hoopers had not converted to a petitory action, and thus had not waived their possessory claims.
We find on our de novo review, however, that the Hoopers improperly cumulated their possessory action with a petitory action, demonstrated by their assertions of ownership by title and by prescription, and their request to fix the boundary line. As such, the Hoopers converted their suit into a petitory action and waived their claims of possession. See La. C.C.P. art. 3657; see also, e.g., Reynolds v. Brown, 11-525, p. 7 (La.App. 5 Cir. 12/28/11), 84 So.3d 655, 659 (although plaintiff sought to file possessory action, pleadings and facts were more consistent with petitory action); Chevron U.S.A. Inc. v. Bergeron, 551 So.2d 746, 749 (La.App. 1st Cir.1989) (“the person claiming ownership converts the [possessory] action to a petitory action.... ”). The language in the Hoopers’ petition that they “possessed” the property for either a ten— or thirty-year prescriptive period may suggest to a casual reader that the claim is consistent with a possessory action, but we point out that a ruling on the issue of acquisitive prescription would necessarily be a determination of ownership, or lack thereof. See La. Civil Code arts. 3473, 3486 (located in Book III—Of the Different Modes of Acquiring the Ownership of Things).
Accordingly, we find that the trial judge was legally mistaken by finding that the Hoopers had not converted their suit by improperly cumulating possessory and pet-itory actions. As such, his ruling that the Hoopers had proven possession and 11ghad a right to possess the property is without effect; we accordingly delete that portion of the amended judgment.
And given our finding that the Hoopers converted the suit to a petitory action, we now determine their burden of proof. See La. C.C.P. art. 3653; Pure Oil, Cuny. The trial judge found the Hoopers to be in possession of the disputed property and although we delete that portion of the judgment, we agree, after a review of the record, that the Hoopers were in possession of the property up to their fence line, and consequently, defendants were not in possession. Therefore, the Hoopers were required to prove “a better title [to the property] than the defendant.” La. C.C.P. art. 3653(2). Cf. Pure Oil, 294 So.2d at 799.
Ill
With the preceding conclusions in mind, in this Part we set forth the relevant principles regarding review of the partial summary judgment.
We review a trial judge’s grant of summary judgment de novo, using the same criteria that the trial judge utilizes in his determination of whether summary judgment is appropriate, in the light most favorable to the non-moving party. See Phipps, 14-0672, p. 31, 163 So.3d at 229. De novo review involves examining the facts and evidence in the record, without *974 regard or deference to the judgment of the trial court or its reasons for judgment. See Cusimano v. Port Esplanade Condominium Ass’n, Inc., 10-0477, p. 4 (La.App. 4 Cir. 1/12/11), 55 So.3d 931, 934. While the reasons for judgment may be informative, they are not determinative of the legal issues to be resolved on appeal. See id., pp. 4-5. See |iaofeo Wooley v. Lucksinger, 09-0571, 09-0584, 09-0585, 09-0586, pp. 77-78 (La.4/1/11), 61 So.3d 507, 572 (Because appellate courts review judgments and not reasons for judgments, “[judgments are often upheld on appeal for reasons different than those assigned by the district judges.”).
Summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966 B(2).[4] The burden of proof rests with the movant, but if the movant will not bear the burden of proof at trial, then the movant’s burden on the motion “does not require him to negate all essential elements of the adverse party’s claim ... but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim....” La. C.C.P. art. 966 C(2).[5] If the non-moving party thereafter fails to produce contrary factual support sufficient to show that he will be able to carry his burden of proof at trial, then there is no genuine issue of material fact and summary judgment is proper. La. C.C.P. art. 966 C(2).[6] “A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate.” Phipps, 14-0672, p. 19, 163 So.3d at 224 (quoting Smitko v. Gulf South Shrimp, Inc., 11-2566, p. 8 (La.7/2/12), 94 So.3d 750, 755).
IV
In this Part, we turn to the aspect of the partial summary judgment which found that the Hoopers had not acquired ownership to the property.
The Hoopers have consistently claimed that the surplus land falls entirely on then-property, yet they have frequently altered then- arguments throughout these proceedings, sometimes contradictorily. We have, however, distilled three distinct and alternative claims by which they assert ownership: (1) by title; (2) by ten-year acquisitive prescription; and (3) by thirty-year acquisitive prescription.
A
First, as we understand them argument, the Hoopers claim title to the 120.77 feet because some of the deeds in their chain of title describe the width of Lot 26 as “one arpent more or less,” the “more” being sufficient to encompass the surplus property.[7]
The record reveals that Hero provided evidence of a complete chain of title back *975 to the sovereign to establish their ownership of Lots 27-35. Thus, to succeed on this claim and acquire the contested portion of Lot 27, the Hoopers must demonstrate a better title than Hero. See Part II-C, ante.
l1sThe deed from the common owner, the City of New Orleans, to the Hoopers’ ancestor-in-title, Alphonse Camus, conveyed a lot one arpent in width and did not contain the language “more or less.” Moreover, the deed from Burmaster to the Hoopers clearly states that the width of Lot 26 is 192 feet, which is the measurement of one arpent. Thus, the Hoopers’ assertion that the description “more or less” was used in all of the deeds in their chain of title is factually incorrect. Importantly, the words “more or less” have consistently been held to mean “about” and refer to, if any, an incidental and non-consequential amount of property. See Pierce v. Lefort, 197 La. 1, 8, 200 So. 801, 803 (La.1941) (“more or less” are words “of safety and precaution and, when used in a deed, are intended to cover some slight or unimportant inaccuracy in the frontage, depth or quantity in the land conveyed.”); see also Jurisich v. Louisiana Dept. of Wildlife and Fisheries, 508 So.2d 588, 591 (La.App. 4 Cir.1987); Takewell v. Masters, 48,111, p. 4 (La.App. 2 Cir. 6/26/13), 117 So.3d 301, 303-04; Long-Fork, L.L.C. v. Petite Riviere, L.L.C., 07-1316, p. 5 (La.App. 3 Cir. 6/11/08), 987 So.2d 831, 835. The inclusion of “more or less” in a deed has never been used to cover “serious discrepancies or major inaccuracies.” Pierce, 197 La. at 8, 200 So. at 803. Moreover, despite the occurrence of the language in the Hoopers’ chain of title, “[w]hen the parties trace them titles to a common author preference shall be given to the more ancient title.” La. Civil Code art. 793. Because the Hoopers and Hero trace their titles to a common owner, we thus give preference to the oldest title, |1Bfrom the City of New Orleans to Alphonse Camus, which did not include phrase “more or less” and clearly stated that Lot 26 measures one arpent wide.
Accordingly, we find that the Hoopers have not proved better title than Hero by the addition of the phrase “more or less” in subsequent titles.
B
Although we find that the Hoopers’ title does not trump Hero’s title, if the Hoopers have satisfied the requisites for either a ten—or thirty-year acquisitive prescription, then they will have acquired the property despite Hero’s title. See La. CM Code art. 794 (“When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles.”); see also George M. Murrell Planting & Mfg. Co. v. Dennis, 06-1341, pp. 4-5 (La.App. 1 Cir. 9/21/07), 970 So.2d 1075, 1080 (“In a petito-ry action, when one party relies on title and the other on acquisitive prescription, the party relying on title will prevail unless the adversary establishes his ownership by acquisitive prescription.”).
1
To be entitled to the property by ten-year acquisitive prescription, the Hoo-pers must have actually possessed the property in good faith and with just title. See La. Civil Code art. 3475. A title is just when the deed is written, in valid form, and sufficient to transfer ownership on its face. See La. Civil Code art. 3483; see also Barrois v. Panepinto, 13-0577, p. 2 (La.App. 4 Cir. 1/8/14), 133 So.3d 36, 37. Moreover, the title must sufficiently describe the property so that it can be | ^identified and located from the description. See Barrois, 13-0577, p. 2, 133 So.3d at 37. As a general rule, the description must fully appear within the four corners *976 of the deed, or the deed should refer to a map or plat so that the location of the property is clear. See Quality Environmental Processes, Inc. v. I.P. Petroleum Co., Inc., 13-1582, 13-1588, 13-1703, pp. 12-13 (La.5/7/14), 144 So.3d 1011, 1020. If the property is not sufficiently described within the title, one cannot acquire it by ten-year acquisitive prescription. See Barrois, 13-0577, p. 2, 133 So.3d at 37-38.
Despite the Hoopers corporeal possession of the property, see Part II-C, ante, we have previously held that the lack of a definitive description of the boundaries or actual location of the property line cannot establish just title. See Ensenat v. Edgecombe, 95-0641, 95-0642, pp. 7-8 (La.App. 4 Cir. 5/15/96), 677 So.2d 138, 143-44 (map attached to the act of sale failed to delineate boundary lines and therefore title did not encompass disputed land). Here, as in Ensenat, the language in the Hoopers’ deed conveying without warranty “all property ... lying easterly [of Lot 26]” contains -no definitive description of the land, and lacks boundary or property lines. We find that the deed does not sufficiently encompass the disputed property and therefore, the Hoopers have failed to establish just title. Accordingly, their claim of ten-year acquisitive prescription must fail.
2
Alternatively, to establish ownership by thirty-year acquisitive prescription, the Hoopers and their ancestor-in-title, Burmaster, must have possessed the property for thirty years without interruption, but just title and good faith are not | ^required. See La. Civil Code arts. 794, 3486; see also Loutre Land and Timber Co. v. Roberts, 10-2327, p. 8 (La.5/10/11), 63 So.3d 120, 125-26 (a party may tack its possession onto the possession of its ancestor-in-title for purposes of 30-year acquisitive prescription).
Acquisitive prescription, however, does not run in favor of a precarious possessor. See La. Civil Code art. 3477. Precarious possession is “[t]he exercise of possession over a thing with the permission of or on behalf of the owner or possessor.” La. Civil Code art. 3437. As previously noted, from 1975 to December 31, 1989, Hero leased Burmaster a portion of Lot 27, extending up to 150 feet east from the dividing line between Lots 26 and 27. One who leases property from the owner, with the owner’s consent and permission, is a precarious possessor. See La. Civil Code art. 3438 (“A precarious possessor, such as a lessee ... is presumed to possess for another although he may intend to possess for himself.”); Delacroix Corp. v. Perez, 98-2447, pp. 8-9 (La.App. 4 Cir. 11/8/00), 794 So.2d 862, 868-69. See also La. Civil Code art. 3439 (A precarious possessor “commences to possess for himself when he gives actual notice of this intent to the person on whose behalf he is possessing.”).
Accordingly, assuming that all other requirements for thirty-year acquisitive prescription were met, adverse possession would not have begun until at least January 1, 1990, which was the first day after the lease ended. And because thirty years from 1990 is not until 2020, the Hoopers have not satisfied the requisite time 119period and thus have not acquired the property by thirty-year acquisitive prescription.
C
In summary, we find that no genuine issues of material fact exist as to the Hoo-pers’ lack of ownership of the entire 120.77 feet of property. In other words, the Hoo-pers have failed to demonstrate that they would be able to carry their burden of proof at trial to show that they acquired the entirety of the property either by title or by acquisitive prescription. We also *977 find that there are no genuine issues of material fact as to the conclusion that the surplus property falls somewhere in between the western boundary of Lot 26 and the eastern boundary of Lot 35. Partial summary judgment with respect to these issues was therefore appropriate.
V
We now turn to the portion of the judgment which fixed the boundary, and must decide whether apportionment, whereby the judge divided the surplus property equally among the ten lots, and fixed the boundary between Lots 26 and 27 at 204.077 feet, was the appropriate remedy.
We first note that, generally, the fixture of a boundary line is reviewed under the manifest error standard, see Morris v. Sigur, 584 So.2d 729, 730 (La.App. 4th Cir.1991), but because this is an appeal of a partial summary judgment, which requires us to decide whether genuine issues of material fact exist, we give no special weight to the lower court’s factual findings. See Phipps, 14-0672, p. 31, 163 So.3d at 229. Cf. Kadair, 13-1171, p. 11, 146 So.3d at 702 (boundary | ¡^location is question of fact; factual findings are entitled to great deference and will not be disturbed absent manifest error).
The Hoopers argue that apportionment is “foreign” to Louisiana law. Notably, however, at least two Louisiana circuit courts have previously found that equal apportionment of surplus property is appropriate, absent any other controlling questions of title. See, e.g., Kennedy v. Chappuis, 125 So.2d 247 (La.App. 3rd Cir. 1960); Thomas v. Patenotte, 47 So.2d 62 (La.App. 1st Cir.1950).[8] Since those two cases, however, there is a dearth of guidance on the proper method to divide property which exceeds the bounds called for in the titles. The Civil Code allows a boundary to be fixed either extrajudieially, i.e., by agreement of the parties, or judicially, by a court. See La. Civil Code art. 789, The court may fix the boundary between contiguous lands in accordance with the ownership or possession of the parties. See La. C.C.P. art. 3693; see also La. Civil Code art. 792 (Fixing of boundary according to ownership or possession). Prior to its repeal in 1977, La. Civil Code art. 851 required that, if the actual property was in excess of the property stated in the titles, the surplus must be divided proportionally among the interested parties, absent any showing of possession by acquisitive prescription. See 1977 La. Acts 170.[9] Currently, however, because there is no longer a statute |ai specifically governing the division of surplus property, it appears that in the absence of an extrajudicial agreement, the trial judge has the authority to fix the boundary line either by ownership or possession, necessarily including cases involving surplus property.
As previously discussed, the Hoopers have not acquired the property by either ten—or thirty-year acquisitive prescrip *978 tion; therefore, the trial judge correctly declined to fix the boundary according to possession.
As to ownership by title, we have already concluded that the ten lots were intended to be of equal width, notwithstanding the “one arpent” measurement included in the parties’ respective titles. The parties do not dispute that the distance between the western boundary of Lot 26 and the eastern boundary of Lot 35 is actually 2040.77 feet[10] and the several surveys conducted over the years confirm this distance. It has been held that, “[a]s a matter of title, the courses and distances fixed by the survey prevail over the acreage quantities shown [in the title].” Ledoux v. Waterbury, 292 So.2d 485, 487 (La.1974) (citation omitted); see also Sutton v. Montegut, 570 So.2d 481, 486 (La. App. 5th Cir.1990) (citing Prather v. Vallen, 327 So.2d 130, 133 (La.App. 3rd Cir. 1976) (“Identification of land by acreage or quantity is the lowest ranking of all; enumerated standards in describing property and other measurements, including description by metes and bounds, controls over the acreage designation.”)). Generally, the more accurate [ ¡^description is demonstrated by a survey or map attached to, or referenced in, the title. See Sutton, 570 So.2d at 486 (citing Prather, 327 So.2d at 133) (“[W]here there is an error or ambiguity with regard to a description in a deed, an attached map relating to the ambiguity or error will control.”); McDaniel v. Roy O. Martin Lumber Co., Inc., 560 So.2d 676, 679 (La.App. 3rd Cir.1990) (“It is settled law that where there is conflict between the written description in a deed and an attached plat, the plat of survey will control and govern the conveyance.”).
Here, both parties’ deeds describe the property to be conveyed as “per plan of Louis Pilie.” A description of property, when modified by words “as per” is commonly understood to mean, “in accordance with,” or “in accordance with the terms of.” See Wickes v. Home Bldg. & Loan Ass’n, 172 So.2d 756, 758 (La.App. 4th Cir.1965). As previously noted, however, the Pilie plan does not contain any specific measurements in metes or bounds. Nevertheless, several subsequent surveys have confirmed that the stated width of ten arpents is inaccurate by a total of 120.77 feet.
Keeping the above principles in mind, it is clear that the trial judge in this case fixed the boundaries according to title rather than possession. See La. C.C.P. art. 3693. The eastern boundary of Lot 26 and the western boundary of Lot 35 have both steadfastly remained throughout the years at an actual distance of 2040.77 feet, and each lot therein was clearly intended to be of equal width. Moreover, the Hoo-pers have not proven that the entirety of the surplus property is on Lot 26 or otherwise between Lots 26 and 27. If we are to accept the Hoopers’ | ¡¡«¡argument that apportionment was improper, the alternative options would be that (1) Hero receives the entirety of the surplus property; (2) neither party receives the surplus property and the boundary lines are fixed to exactly one arpent each; or (3) the surplus property is carved out of the existing lots and Hero and the Hoopers own and use the 120.77 feet together. None of these outcomes seem equitable or commonsense in *979 light of the substantial evidence before us. Therefore, we find that, as a matter of law, equal apportionment among the ten lots was the correct method to divide the disputed property.
VI
We now move to address the Hoo-pers’ remaining assignments of error, which are primarily procedural in nature, and which have been condensed in light of repetitive or obscure arguments.[11]
The Hoopers assert that summary judgment was inappropriate because the trial judge did not order Hero to file a petitory action after “renderpng] judgment that the Hoopers had possession of 120.77 feet.” Relatedly, the Hoopers argue that Hero did not request affirmative relief in the proper procedural vehicle, e.g., a petition or incidental demand.
124These claims, from our reading of appellants’ brief, appear to be predicated on the rule which would require Hero to file a petitory action in light of the ruling finding the Hoopers in possession. See La. C.C.P. art. 3662 (“A judgment rendered for the plaintiff in a possessory action shall ... [o]rder the defendant to assert his adverse claim of ownership of the immovable property ... in a petitory action....”).
Had this action properly proceeded solely as possessory, the Hoopers are correct that, at their request, the judge would have been required to order Hero to file a petitoiy action. As discussed above, however, because we find that the Hoopers waived their possessory action, the trial judge’s ruling on possession is without effect, and therefore does not trigger the requirement under La. C.C.P. art. 3662 A(2).[12] The suit proceeded as petitory, and ultimately decided the issue of ownership, thus negating any requirement for Hero to file for petitory relief. See, e.g., Kadair, 13-1171, p. 14, 146 So.3d at 704 (portion of judgment ordering defendant to file petitory action was erroneous and unnecessary in light of ruling that plaintiffs acquired property by thirty-year acquisitive prescription).
The Hoopers also argue that the trial judge erred by apportioning the property and granting the majority of it to Hero (as Hero owns nine of the ten lots), after the judge had found Hooper to be in possession of the property. Once again, because the Hoopers base their argument | Mon the possessory ruling, their argument is moot. Moreover, we have already concluded that apportionment was the correct method to divide the surplus property. See Part V, ante.
Finally, the Hoopers argue that the trial judge erred by ordering the en *980 tire record produced for appeal.[13] The record reflects that, in accordance with La. C.C.P. art. 2128, each party designated the record for appeal as they deemed necessary: the Hoopers only designated a portion of the record, while Hero designated the entire record. The clerk of court “shall have the duty of preparing the record on appeal.” La. C.C.P. art. 2127. Further, in such cases where there are differing designations by the parties, “the clerk shall prepare the record on appeal as so directed.” La. C.C.P. art. 2128. Here, facing conflicting designations by Hero and the Hoopers, the trial judge ordered the clerk to produce the entire record for appeal. We do not find that production of the entire record was in error. The Hoo-pers filed a myriad of pleadings, including four amended petitions, and have changed the bases of their claims many times over the course of these proceedings. Without the entire record, it would be extremely difficult to unravel the facts and several complex issues in this case, a difficulty compounded by the appellants’ apparent inability to present straightforward and consistent arguments.
VII
Having disposed of the assignments of error on appeal, we now turn to an outstanding issue in this case, which can be satisfactorily addressed by the trial la-judge on remand. Despite an adjudication of ownership and boundary lines, neither the original nor the amended judgment in this case set forth a particularized description of the property in question. “All final judgments which affect title to immovable property shall describe the immovable property affected with particularity,” La. C.C.P. art.1919; see also La. C.C.P. art. 2089 (Description required of immovable property affected by judgments or decrees). The judgment must include the legal description of a property, with reference to- landmarks such as roads, benchmarks, or other monuments which can be located, or a survey commencing at some established point. See Deano v. Brouillette, 94-1856, p. 8 (La.App, 4 Cir. 11/16/95), 664 So.2d 1283, 1287; Martin v. Brister, 37,011, pp. 6-7 (La.App. 2 Cir. 7/23/03), 850 So.2d 1106, 1111 (internal citation omitted). The purpose of this requirement is “to ensure that the public in general, and title examiners, successful litigants, officials charged with executions of judgments and surveyors in particular, accurately can deal with the immovable property.” Deano, 94-1856, p. 8, 664 So.2d at 1287 (internal citation omitted). The failure to describe a property, however, does not nullify or affect the judgment rendered. See Fields v. Etheridge, 487 So.2d 551, 552 (La.App. 4th Cir.1986).
In situations where a particularized description has been lacking, and where the description was discernable from the record, appellate courts have addressed the merits, but either amended the judgment to include such description, see, e.g., id., 487 So.2d at 552-53, or remanded to the trial court for amendment. See, e.g., Young v. Tolintino, 44,631, pp. 12-13 (La.App. 2 Cir. 12/2/09), 26 So.3d 835, 841-42.[14]
*981 The record before does contain particularized descriptions of the property in question, but considering that the judgment in this case fixed the boundary lines and enlarged each lot by 12.077 feet, thereby altering the existing legal descriptions, we do not find it appropriate to simply amend the judgment. Cf. Cusimano, 10-0477, pp. 15-16, 55 So.3d at 941-42 (judgment did not alter measurements of property therefore court amended judgment to include legal description from title); George M. Murrell Planting, 06-1341, pp. 16-17, 970 So.2d at 1088 (plaintiff adjudicated owner of property by title and court amended judgment to include legal description from said title).
Accordingly, we remand to the trial court for compliance with La. C.C.P. art. 1919. In order to determine an accurate legal description in light of the new boundary lines, the trial judge may wish to appoint a surveyor for this purpose. See La. C.C.P. art. 3692.
CONCLUSION
We find, as a matter of law, that the trial judge erred by allowing the improper cumulation of possessory and petitory actions. We also find that no genuine issue of material fact exists with respect to the ownership of the property 12Sor the boundaries thereof and therefore the partial summary judgment in favor of Hero, and which dismissed the Hoopers’ claims (with exception of the trespass claims) with prejudice, was proper.
DECREE
We amend the judgment to delete that portion relating to the possessory claims of James and Patsy Hooper and, as amended, affirm the remainder of the judgment in favor of Hero Lands Company. We remand to the trial court for compliance with La. C.C.P. art. 1919 and for further proceedings on the appellants’ trespass claims against Hero and the other defendants.
AMENDED; AFFIRMED AS AMENDED; REMANDED.

.- Although filed as a summary judgment, the trial judge rendered a partial summary judgment. See La. C.C.P. art. 966 E ("A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties.”). And the judge then designated the judgment as final for purposes of immediate appeal. See La. C.C.P. art. 1915 B(l). Earlier however, we did dismiss the Hoopers’ appeal with regard to the grant of partial summary judgment in favor of Hugh McCurdy III and Plaquemines Parish Government because those judgments were not designated as final for the purposes of appeal. See La. C.C.P. arts, 966 E; 1915 A(3), B; MR Pittman Group LLC v. Plaquemines Parish, 15-0395 (La.9/16/15), 176 So.3d 549.

. La. Civil Code art. 789 provides that a boundary “may be fixed judicially or extraju-dicially” and "[i]t is fixed extrajudicially when the parties, by written agreement, determine the line of separation between their lands with or without reference to markers on the ground.” La. Civil Code art. 795 provides that "[w]hen the boundary is fixed extrajudi-cially, the agreement of the parties has the effect of a compromise.”

. Although the Louisiana Supreme Court denied writs in this case, it did state that its denial did not preclqde the applicant from bringing a subsequent boundary action. See Harvey v. Harvey, 347 So.2d 246 (La. 1977).

. This is how the statute read at the time the partial summary judgment was rendered. It has since been amended, effective January 1, 2016. See 2015 La. Acts 422.

. This section has since been amended. See n. 4, ante.

. See n. 4, ante.

.We note that although the Hoopers consistently raised this argument in their several petitions, they curiously did not raise it in their appellate brief and even more bafflingly, denied this as their position during oral argument before us. Nevertheless, because we find this to have been one of their core claims to the surplus property, we address it here.

. We note that these cases both relied on the now-repealed provision of the former Dart Louisiana Code of Practice, article 462.36 [§ 2036] (1942 Ed.).

. The substance of former Article 851 does not appear in the current Civil Code, and therefore apportionment, as a statutory rule, no longer exists. It is likely, however, that the legislature was aware of the need for greater flexibility in situations where excess property must be distributed, and that an equal division between the parties may not always present the just or commonsense solution. See, e.g., Lucas v. Asset Realization Co., 51 So.2d 652, 657 (La.App.Orl.1951) (it is not always obligatory to divide a surplus of property between the parties in all circumstances, despite the statutory mandate of La. Civil Code art. 851).

. We do note, however, that despite the Hoopers’ consistent acknowledgment that the 120.77 feet fell between Lots 26 and 35, during oral argument before us they asserted, for the first time, that the surplus property was actually part of Lot 25, and was therefore completely outside the ten lots. There has been no evidence presented in support of this claim and because it is contradictory to every preceding argument, we do not give it any consideration on the merits.

. In addition to the assignments addressed in this Part, the appellants also claim that the trial judge erred by: (1) failing to hear full argument during the summary judgment hearing; (2) failing to consider the "proof” in the Hoopers’ Motion for Reconsideration which showed that Hero’s property only extended a maximum of 1728 feet (nine arpents) from the eastern border of Lot 35 and thus all the surplus property fell within Lot 26; and (3) failing to consider the Hoopers' Motion for a New Trial when it was filed timely. These claims, however, while included as assignments of error, are not briefed, and we therefore do not consider them. See Uniform Rules, Courts of Appeal, Rule 2-12.4 ("All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed.”).

. Furthermore, even though the trial judge rendered judgment on the Hoopers' possesso-ry claims, albeit improperly, he then proceeded to rule on the petitory claims in Hero’s favor, negating any favorable judgment for the Hoopers on the issue of possession. Clearly, then, the judge did not intend to give any substantive effect to the possession ruling.

. The Hoopers sought review by supervisory writ of the trial judge's ruling ordering production of the entire record. This court denied writs, finding that the Hoopers had an adequate remedy on appeal. See Hooper v. Hero Lands Co., 15-0051 (La.App. 4 Cir. 4/23/15) (unpub’d).

. Appellate courts have also found that a judgment lacking a particularized description of the affected property did not constitute a final, appealable judgment and therefore declined to address the merits. See, e.g., Morgan v. Pardue, 15-0149, pp. 4-6 (La.App. 3 Cir. 10/7/15), 175 So.3d 1053, 1056-58; Goal Properties, Inc. v. Prestridge, 14-422, pp. 4-5 *981 (La.App. 3 Cir. 11/5/14), 150 So.3d 610, 613-14. Notably, however, the judgments in these cases were deficient for additional reasons other than noncompliance with La. C.C.P. art.1919.